Kenneth E. Krosin
Foley & Lardner LLP
3000 K St., N.W., Suite 500
Washington, DC 20007-5143
Direct Phone: (202) 672-5332
Direct Fax: (202) 672-5399
kkrosin@foley.com

Beth H. Parker
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA  94111-4067
Direct Phone: (415) 393-2556
Direct Fax: (415) 393-2286
beth.parker.bingham.com

November 13, 2006

**Vɪᴀ Eʟᴇᴄᴛʀᴏɴɪᴄ Fɪʟɪɴɢ ᴀɴᴅ Hᴀɴᴅ Dᴇʟɪᴠᴇʀʏ**

United States Magistrate Judge Joseph C. Spero
Courtroom A, 15th Floor
450 Golden Gate Ave.
San Francisco, CA 94102

> Re:   *Nichia Corp. v. Seoul Semiconductor, Ltd., et al.*,
>        Case No. 3:06-CV-0162-MMC (JCS) (N.D. Cal.)

Dear Judge Spero:

On November 2, 2006, lead counsel for Plaintiff Nichia Corp. ("Nichia") and Defendants Seoul Semiconductor, Ltd. ("Seoul Korea") and Seoul Semiconductor, Inc. ("Seoul USA") (collectively "Seoul") conferred in-person on several outstanding discovery disputes.  The disputed topics included: (1) Seoul's production of discovery related to foreign sales, (2) Seoul's production of discovery related to products not accused and identified in the Complaint, (3) Seoul's production of sales and marketing documents dated before June 2004 (issuance of patents-in-suit), (4) Nichia's production of discovery related to its infringement analyses, and (5) the protective order.

Through the meet and confer process, the parties were able to reach agreement on the protective order.  Conflict on the other topics remains, and are discussed in this letter.  Each of the remaining issues in dispute is addressed below following a brief background included to place these issues in context.

As to the issue of documents related to Seoul's foreign sales, the parties respectfully request formal briefing.  Seoul expects to file declarations in response to any motion to compel directed to this issue.  Nichia also expects to file declarations in rebuttal.  Thus, a formal briefing schedule is requested on this issue.  The parties also plan to respectfully request an expedited briefing schedule on any issues requiring formal briefing since fact discovery ends on January 26, 2007.

United States Magistrate Judge Joseph C. Spero
November 13, 2006
Page 2

# I.    Initial Statements

## A.    Nichia's Initial Statement[1]

Seoul compelled Nichia to file this action by refusing to respect Nichia's patent rights.  When Nichia approached Seoul to express its concern that Seoul was infringing Nichia's U.S. Design Patent No. D491,538, directed to a light emitting diode ("LED"), Seoul's actions did not reassure Nichia's concerns.  For example, Seoul continued to offer for sale on it web site its 902 series LED, which is an exact copy of the claimed design, with no territorial restrictions, and Seoul actually sold the 902 series LED to NanoScience Exchange in the U.S.  In addition, Seoul has opened U.S. offices making clear its intent to penetrate the U.S. market.  Faced with this reckless disregard for its patent rights, Nichia was forced to institute the present action to protect itself against future harm and recover damages caused by Seoul's infringement.

With this background in mind, Nichia filed this lawsuit against Seoul Korea, a manufacturer of LEDs, and its wholly-owned U.S. subsidiary, Seoul USA.  The Complaint alleges that LEDs manufactured by Seoul Korea are sold to third parties outside the U.S. who then incorporate the LEDs into products that are imported into the U.S.  The Complaint alleges that these LEDs infringe Nichia's U.S. Design Patents No. D491,538, D490,784, D499,385 and D503,388 (collectively "patents-in-suit").  In addition, the Complaint alleges that Seoul Korea "induced others, including the other defendants, to infringe the [patents-in-suit] by encouraging and promoting the use, manufacture, importation, sale and/or offer for sale by others of products that infringe the [patents-in-suit]."

Seoul alleges that the patents-in-suit are invalid for lack of ornamentality based on its size and the fact that the LEDs are "hidden" when embedded in back light units and liquid crystal display ("LCD") modules used in consumer products such as MP3 players, cell phones and PDAs sold in the U.S.  Nichia will not address the merits of these arguments since they are not the subject of any discovery disputes addressed in this joint letter.  Nonetheless, Seoul's allegations of lack of ornamentality stand in stark contrast to the fact that it also applied for and obtained U.S. design patents on side-view LEDs similar to the type at issue in this litigation.  *See* U.S. Design Patent Nos. D529,451 and D529,452.[2]  Further, Seoul's patents issued on October 3, 2006, months *after* Seoul filed its Answer and Counterclaims alleging invalidity of the patents-in-suit.  If Seoul truly believes that such designs are not subject to design patent protection, Seoul is in violation of 37 C.F.R. § 10.18 (b)(2)(ii)-(iii).

---

[1] Seoul for the first time disclosed its "initial statement" (or its intention to include an initial statement) to Nichia less than 12 hours before the deadline for filing this joint letter.  Because of Seoul's refusal to remove this irrelevant and argumentative statement, Nichia felt compelled to address Seoul's statements in its own initial statement.

[2] Seoul has also applied for and obtained similar protection on designs similar to that of the patents-at-issue in other countries.

*Nichia Corp. v. Seoul Semiconductor, Co., et al.*,
Case No. 3:06-CV-0162-MMC (JCS) (N.D. Cal.)

United States Magistrate Judge Joseph C. Spero
November 13, 2006
Page 3

In its Complaint, Nichia accused Seoul's infringing LEDs, *including but not limited to*, the 902 series LED. A comparison of photographs of Seoul's 902 series LEDs with the patents-in-suit show that the 902 series LED is a *blatant copy* of Nichia's patented design.

Seoul also admits that it sold its 902 series LED in the U.S., but alleges that the sale was "*de minimus*." Nichia will not address the merits of this alleged "affirmative defense" since it is not the subject of any discovery dispute addressed in this letter. Nonetheless, the facts are that: (1) Seoul listed the 902 series LED for sale on its website (www.zledstore.com) without any territorial restrictions on sales, (2) Seoul responded to the inquiries of a third-party (NanoScience Exchange) regarding the 902 series LED, (3) Seoul directed the third-party to Nichia's own website in correspondence in connection with the sale, and (4) Seoul willingly sold the 902 series LED in the U.S. and shipped the product to the third party in the U.S. This single sale is conclusive evidence of Seoul's willingness to violate Nichia's patent rights when it believes that the sale will not be discovered by Nichia.

In addition, as the basis of its unclean hands defense, Seoul argues that the sale in the U.S. was "orchestrated by Nichia and its lawyers." Nichia, however, did not force Seoul to make this sale. Instead, Seoul made the sale willingly in response to NanoScience Exchange's inquiry as to purchasing a product openly advertised on Seoul's web site. Moreover, this sale occurred *after* Nichia sent Seoul a warning letter on March 11, 2005 alleging design patent infringement of the Nichia's Design Patent No. D491,538 patent. Thus, Seoul was aware of Nichia's patent rights and chose to ignore these rights in making sales in the U.S.

Despite admitting the U.S. sales, Seoul has used Rule 11 accusations as a sword against Nichia to stonewall discovery and attempt to obtain privileged documents. For example, Seoul has suggested that *Nichia* violated Rule 11 by requesting discovery on Seoul's 903, 1002 and 1003 series LEDs before performing an adequate pre-filing investigation. However, a simple comparison of these products shows that these products are clearly relevant. *See* Exhibit 1 (comparison of Seoul's 903, 1002 and 1003 series LEDs with Nichia's Design Patent No. D503,388). Even further, Seoul in fact sold the 903 series LED in the U.S. to NanoScience Exchange at the same time it sold the 902 series to Nichia. These products are the subject of discovery disputes and are addressed in more detail below.

Further, Seoul makes the incredulous argument that it cannot be liable for inducing infringement because "it has no idea what product its LED will end up in, nor who the manufacturer will sell it to next," and has no knowledge that the end products in the U.S. It is unfathomable that a sophisticated corporation like Seoul does not know what its own products are used for and how the products flow in the stream of commerce. Such information is necessary, *inter alia*, to determine how many products Seoul should produce, to successfully design a product that meets consumers' needs, and to efficiently coordinate sales efforts. In fact, Seoul seems to be acutely aware of how its products are used by stating that its products are incorporated into back light and LCD modules that are, in turn, inserted into MP3 players, cellular phones, and PDAs. These products are widely used in the U.S. and Seoul's infringement has damaged Nichia immensely. Nichia had been selling more than a billion of its own LEDs embodying the patented design before infringers like Seoul began to manufacture dead-copy LEDs. Indeed, Seoul's foreign sales are, by its own admission, in the millions. Nonetheless, Seoul refuses to produce clearly relevant documents related to foreign sales

3

United States Magistrate Judge Joseph C. Spero
November 13, 2006
Page 4

based on its argument that such documents are irrelevant. To the contrary documents and information related to foreign sales are clearly relevant to the infringement allegations in this case, as more fully addressed below.

### B.    Seoul's Initial Statement

Seoul Semiconductor, Co., Ltd. and Seoul Semiconductor, Inc. (collectively "Seoul") make light emitting diode ("LED") products, including the side-view LED at issue in this litigation. Nichia Corporation ("Nichia") is a direct competitor. Seoul and Nichia vigorously compete for customers, market share and revenue throughout Asia.

At issue are a series of design (not utility) patents embodied in a product half the size of a grain of rice. The allegedly ornamental features of this product are impossible to observe with the naked eye, and all seem more functional than ornamental. The product itself is one of seven hidden components of a back lighting unit ("BLU"), which in turn is one of twenty embedded components of a liquid crystal display ("LCD") module. The LCD module is, in turn, inserted into a MP3 player, cellphone or PDA, the ultimate consumer end-product. That end-product, not any of its individual components, is sold in the United States.

In its complaint, Nichia accused only one Seoul product, the 902 series, of infringing the patents-in-suit. This allegation is based on one *de minimus* (approximately $14,000) sale in the US, orchestrated by Nichia and its lawyers through Nichia's agent NanoScience Exchange. Seoul has made no direct sales of the 902 series to any manufacturer of any component that is imported directly into the United States.

On the basis of this thin reed, Nichia is seeking to use United States patent laws, and the United States courts, not just to hinder competition worldwide in the side-view LED market but also to force Seoul to incur untold costs in collecting, processing and producing paper and electronic documents in Korea. The federal rules do not tolerate such an abuse of the litigation system. Other than the one sale it orchestrated, Nichia cannot prove direct infringement. On its active inducement claim, Nichia is even further out on a limb. Nichia must show that Seoul intended to induce a party who directly infringed the patents-in-suit in the United States. *Crystal Semiconductor Corp. v. TriTech Microelectronics Intern., Inc*., 246 F.3d 1336, 1351 (Fed. Cir. 2001) ("[i]nducement only occurs if the party being induced directly infringes the patent."). Such a showing is impossible. Seoul only sells its product abroad, mainly to BLU manufacturers, and no company "resells" the accused product in the United States. The only way the accused product ever enters the United States, if at all, is as one of hundreds of subcomponent parts in a larger consumer electronic product. At that point, the ornamental features are buried, and of no concern to consumers. Moreover, when Seoul sells its tiny LED product to manufacturers, Seoul has no idea what product its LED will end up in, nor does Seoul know who the manufacturer will sell it to next. As such, it is impossible for Seoul to have intended to induce a direct infringer.[3]

---

[3] Nichia states that it is "incredulous" that a sophisticated company like Seoul "does not know what its own products are used for and how the products flow in the stream of commerce."

*Nichia Corp. v. Seoul Semiconductor, Co., et al.*,
Case No. 3:06-CV-0162-MMC (JCS) (N.D. Cal.)

United States Magistrate Judge Joseph C. Spero
November 13, 2006
Page 5

It is in this context of anticompetitive behavior and legal impossibility that Nichia seeks broad discovery of Seoul's foreign sales and of a variety of Seoul products, most not accused nor named in the complaint. Nichia already has contravened important Federal Rule and Federal Circuit principles. Under Rule 11 and controlling Federal Circuit law, Nichia is required to have completed a pre-filing infringement analysis of all accused products and provide its theory of infringement to Seoul when challenged. Fed. R. Civ. Pro. 11(b)(3); *View Engineering, Inc. v. Robotic Vision Sys., Inc.,* 208 F.3d 981, 986 (Fed. Cir. 2000). It has refused to do this. Under Rule 26, discovery is supposed to balance relevance with burden. FRCP 26 (b)(2)(iii). Most of Nichia's discovery is wholly irrelevant; it will not lead to the discovery of relevant evidence; and its expense far outweighs its likely benefit and the amount in controversy.

In sum, Seoul will take a position in this letter on each outstanding discovery dispute, as required under Magistrate Judge Spero's rule, but its overarching position is that Nichia's behavior is anticompetitive, and the discovery it seeks is overreaching and neither relevant nor designed to lead to the discovery of relevant evidence.

## II.   Discoverability by Nichia of Documents Related to Foreign Sales of Seoul

Nichia has served Seoul with requests for production and interrogatories related to Seoul's sales and marketing of allegedly infringing products outside the United States. Seoul has objected to these requests and refused to produce such documents because, in its view, these sales are irrelevant and their burden outweigh their benefit. The parties substantive positions and proposed compromises are set forth below.

### A.   Nichia's Position

The Federal Rules of Civil Procedure require Seoul's production of the requested information about foreign sales and marketing documents because such sales are relevant to a number of issues, including damages, as discussed in detail below. Specifically, Seoul Korea's liability for induced infringement, foreign sales and marketing are relevant to the calculation of damages, the non-obviousness of the patents-in-suit, and the ornamentality of the patents-in-suit. Seoul's argument that such information is highly sensitive will soon be obviated by entry of a protective order allowing the parties to make such materials available only to outside counsel. Finally, Seoul's argument that producing such information in discovery will impose an undue discovery burden is nothing more than attorney argument and ignores the undisputed fact that this information is highly relevant to this case, for without it, Nichia will be unable to prove damages resulting from Seoul's infringement of the patents in issue.

### 1.   Foreign Sales are Relevant to Liability for Induced Infringement

---

Nichia misunderstands. Of course Seoul knows that its side-view LEDs are used in BLUs. Seoul certainly knows who it sells to and what *kinds* of ultimate end-products contain its LEDs. Seoul does not, however, have specific knowledge of which particular *brands* of end product contain its LEDs nor where those brands that contain Seoul LEDs are sold.

*Nichia Corp. v. Seoul Semiconductor, Co., et al.,*
Case No. 3:06-CV-0162-MMC (JCS) (N.D. Cal.)

United States Magistrate Judge Joseph C. Spero
November 13, 2006
Page 6

Liability for induced infringement can be found when a party "actively induces infringement of a patent."  35 U.S.C. § 271(b).  There are no territorial limitations to liability for induced infringement, and as explained in *Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137 (7th Cir. 1975), active inducement under § 271(b) can be found regardless of the location of the inducing acts:

> [A]lthough the patent laws of the United States do not have extra-territorial effect, 'active inducement' may be found in events outside the United States if they result in a direct infringement here.

*Honeywell*, 509 F.2d at 1141 (citations omitted); *Johnson Elec. N. Am. v. Mabuchi Motor Am. Corp.*, 103 F. Supp. 2d 268, 281-82 (S.D.N.Y. 2000) ("although the patent laws of the United States do not have extra-territorial effect, 'active inducement' may be found in events outside the United States if they result in a direct infringement here.") (citing *Honeywell,* 509 F.2d at 1141 and *Engineered Sports Prods. v. Brunswick Corp.*, 362 F. Supp. 722, 727 (D. Utah 1973)); *Hauni Werke Koerber & Co., Kg. v. Molins, Ltd.*, 183 U.S.P.Q. (BNA) 168 (E.D. Va 1974).  Because there are no territorial limits to liability for induced infringement, Seoul's acts outside the U.S. are relevant to the issue of its liability for induced infringement.

Information related to foreign sales by a foreign manufacturer is relevant to the issue of induced infringement, and should be produced.  *See Murata*, 422 F. Supp. 2d at 945.[4]  The facts in *Murata* are quite similar to the facts of the present case.  The patent holder, Murata, claimed that Bel Fuse manufactured infringing components in Hong Kong, and then sold them to overseas customers that incorporated them into other products that were sold in the U.S.  Murata requested information regarding Bel Fuse's sales of and profits from its accused products – products manufactured and sold outside of the U.S.  Bel Fuse objected, claiming the information was irrelevant.  The court ordered Bel Fuse to produce information related to those foreign sales.  *Id* at 946.

In the present case, like in *Murata*, accused LEDs are initially manufactured and sold by Seoul Korea outside of the U.S. to overseas customers; the LEDs eventually enter the U.S.  A foreign manufacturer of an accused product, such as Seoul Korea, can be found liable for induced infringement of a U.S. patent where the foreign manufacturer sells the accused product to a customer who then imports the accused product into the U.S.  *See, e.g.*, *MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369.  As such, foreign sales can form the basis for a finding of infringement.

---

[4] Seoul relies on *American Roller Coaster v. Foster Adams Leasing, LLP,* 2006 WL 1371441, *2 (N.D. Ill. 2006) in an effort to demonstrate that *Murata* is inconsistent with Rule 26(b)(1) as amended in 2000.  However, *American Roller Coaster* does not strictly limit discovery so as to prevent discovery of additional products.  Instead, the court denied discovery of transactions involving third parties having no relevance to the issues of the case.  *Id.* at *2.  Here, the requested discovery is directly relevant to Nichia's claim that Seoul has "made, used, imported, sold and/or offered for sale products that infringe the [patents-in-suit], including **but not limited to** products designated in the "902" series."  Moreover, Nichia has demonstrated "good cause" for discovery on the additional products by showing that the additional products, like the 902 series, are exact copies of the patented designs.

6

*Nichia Corp. v. Seoul Semiconductor, Co., et al.*,
Case No. 3:06-CV-0162-MMC (JCS) (N.D. Cal.)

United States Magistrate Judge Joseph C. Spero
November 13, 2006
Page 7

Encouraging a foreign manufacturer to incorporate an infringing product into a product to be imported to sold in the U.S. is considered induced infringement. *See MEMC*, 422 F. Supp. 2d at 944-46 (defendant, a U.S. company, sold product to Japanese subsidiary that sold them to an American subsidiary to which the U.S. company provided product support); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1351 (Fed. Cir. 2001) (holding that a competitor that did not practice patented method in the U.S., but manufactured computer chips using method in Singapore and sold them to purchaser that in turn sold them in the U.S., actively induced patent infringement resulting from U.S. sales). Thus, Seoul's foreign sales and marketing are relevant to the issue of liability for induced infringement because the requested information can be used to show that Seoul has encouraged its customers to incorporate accused LEDs into products to be imported into the U.S.

Moreover, a foreign manufacturer that knows the products it manufactures infringe a U.S. patent and are destined for use in the U.S. may be liable for induced infringement despite the presence of intermediary distributors. *See, e.g., Cybiotronics, Ltd. v. Golden Source Electronics, Ltd.*, 130 F. Supp. 2d 1152 (C.D. Cal. 2001); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Johnson Elec. N. Am.*, 103 F. Supp. 2d 268. Thus, Seoul's foreign sales and marketing are relevant to the issue of liability for induced infringement because the requested information can be used to show that Seoul knows its accused LEDs are destined for use in the U.S.

Nichia believes that the requested information will provide evidence of inducement by Seoul Korea. For example, evidence of inducing infringement could include: packing labels indicating a U.S. final destination (*MEMC*); e-mail messages providing data to meet customer specifications (*MEMC*); offers of technical support (*MEMC*); labels in English (*Cybiotronics*), *etc*. The requested information relates to liability for induced infringement and is therefore relevant to the issues in this case and should be produced.

a)      **Direct Infringement by a Third Party**

To prove active inducement, Nichia must show that there has been direct infringement in the United States. *MEMC Electronic Materials, Inc.* v. *Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005). Seoul alleges that there is no direct infringer whom Seoul could have induced because Seoul has never sold any side view LED products to a company who then imported directly into the U.S. This argument is without merit for a number of reasons.

*First*, documents directed to the actual foreign sales are not the only type of documents requested by Nichia. Instead Nichia's requests are broader, and include, for example, Seoul's communications with its foreign customers.

*Second*, Seoul's customers may not be the only applicable direct infringers. For example, Seoul may supply technical specifications or offers of technical support to its customers' customers. Seoul's reliance on *Crystal* for the proposition that "[i]nducement only occurs if the party being induced directly infringes the patent" is inapposite. *Crystal* merely stands for the unremarkable proposition that direct infringement is a prerequisite to a finding of inducing infringement. Indeed, a foreign manufacturer that knows the products it manufactures infringe a U.S. patent and are destined

United States Magistrate Judge Joseph C. Spero
November 13, 2006
Page 8

for use in the U.S. may be liable for induced infringement despite the presence of intermediary distributors. *See, e.g., Cybiotronics, Ltd. v. Golden Source Electronics., Ltd.*, 130 F. Supp. 2d 1152 (C.D. Cal. 2001); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Johnson Elec. N. Am.*, 103 F. Supp. 2d 268. Seoul should not be immune from liability of U.S. patent infringement simply because it first sells its products to a middle-man. Furthermore, Nichia should not be precluded from discovery of the supply chain simply because Seoul makes self-serving claims that it does not know who the direct infringers are.

*Third*, Seoul also argues that there can be no direct infringement because its products, when incorporated into a product that is directly sold in the U.S., is completely hidden from view. Seoul, however, has not cited a single case, and Nichia has not found any case, supporting Seoul's contention that infringement cannot occur where a product is hidden from view in its end use. In fact, courts have held otherwise. *See, e.g., Keystone Retaining Wall Sys., Inc. v. Westrock, Inc.,* 997 F.2d 1444, 1450 (Fed. Cir. 1993).

*Fourth*, it is undisputed that products containing the accused LEDs are imported into, and sold and used in the U.S. Such importers, users, and sellers are direct infringers under 35 U.S.C. § 271(a). Nichia is entitled to discovery on how Seoul's infringing products end up in U.S. commerce.

### b) Seoul's Knowledge and Intent to Induce

To prove active inducement, Nichia must prove that Seoul "knowingly induced infringement and possessed specific intent to encourage another's infringement." *MEMC Electronic Materials, Inc.* v. *Mitsubishi Materials Silicon Corp.,* 420 F.3d 1369, 1378 (Fed. Cir. 2005). Seoul argues that it cannot intend to or knowingly induce infringement because (1) Seoul does not know to whom its manufacturer customers will sell their components, (2) Seoul does not know the ultimate consumer products in which the LEDs will be inserted, and (3) Seoul does not know where the ultimate consumer products will be sold. Seoul further alleges that it "certainly has no idea whether the LED product it sells will wind up in the United States."

*First*, while Seoul argues it does not know to whom its customers sell components incorporating the accused LEDs, *in the very next paragraph*, Seoul notes that the back light unit and LCD modules its customers sell are used in MP3 players, cellular phones and PDAs. Thus, Seoul admits that it knows to whom its customers sell components incorporating the accused LEDs, namely MP3 player, cell phone and PDA manufacturers.

*Second*, it is highly improbable that Seoul also has no knowledge of the specific end product manufacturer. End product manufacturers typically require detailed specifications for all products they use, including LEDs, and must use information about those parts in designing new products. Indeed, in most cases, Nichia knows the specific end consumer product manufacturers that incorporate its own products. Moreover, Nichia also knows at least some of the specific end product manufacturers that use Seoul's LEDs, *e.g.*, defendant Creative Technology, Ltd. Seoul's claims of ignorance are illogical and contrary to common sense.

*Third*, it is common knowledge that MP3 players, cellular phones, and PDAs are sold in the U.S. Seoul's claim that it does not know that these end products wind up in the U.S. is beyond

8

United States Magistrate Judge Joseph C. Spero
November 13, 2006
Page 9

belief.  Nichia is entitled to discovery on Seoul's knowledge and intent and should not be precluded from discovery based on Seoul's inconsistent and self-serving claims of ignorance.

> **c)**    **Nichia's Requests Are Clearly Relevant and Not Outweighed by the Burden on Seoul or Any Third Party**

Seoul argues that Nichia's requests would be burdensome on Seoul because of the sheer amount of relevant documents and the location of the documents in Korea. This argument is without merit for a number of reasons.

*First*, accepting Seoul's burden argument would preclude Nichia from proving all damages from Seoul's infringement of the patents-in-suit—a result never intended by Rule 26, as explained more fully below.

*Second*, the fact that many of the documents are in the Korean language and must be translated does not impose any greater burden on Seoul than it does on Nichia.  If Nichia is precluded from discovery simply because of the burden created by foreign language documents, every foreign manufacturer in numerous different markets would be essentially immune to U.S. laws—a result that clearly is not the law.

*Third*, Seoul's argument that Nichia's requests would be burdensome on downstream customers in a "long manufacturing chain" goes to the burden on those customers, not Seoul. Indeed, if Seoul really does not know to whom its customers sell back light and LCD modules, it cannot have knowledge of the length of the manufacturing chain.  Moreover, upon information and belief, Nichia believes that in some instances, Seoul's customers are direct infringers.  In other instances, Seoul's customers sell back light and LCD modules incorporating Seoul's LEDs to direct infringers.  Nichia is entitled to such discovery in either case or any other case involving a distribution chain from Seoul to the U.S.

*Fourth*, Seoul has stated that its sales documents are in electronic form.  Thus, production of such relevant documents would not entail as much burden as Seoul claims because Seoul appears to know exactly where and how such documents are stored.  Further, Nichia would incur the same expense to review these relevant documents.

*Fifth*, Seoul's arguments regarding the confidentiality and sensitivity of its sales documents are inapposite.  The parties have negotiated a protective order to address such concerns.

> **2.**    **Foreign Sales are Relevant to Damages**

Because LEDs that are initially the subject of foreign sales eventually become the subject of domestic sales, information about foreign sales is relevant to a determination of the scope of infringement and the damages.

The foreign sales that are the basis for induced infringement may also be the basis for a damage award to Nichia because "[a] party that induces or contributes to infringement is jointly and severally liable with the direct infringer for all general damages."  *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1361 (Fed. Cir. 2001).  "Where a patentee

*Nichia Corp. v. Seoul Semiconductor, Co., et al.*,
Case No. 3:06-CV-0162-MMC (JCS) (N.D. Cal.)

United States Magistrate Judge Joseph C. Spero
November 13, 2006
Page 10

alleges that a manufacturer contributes to and induces infringement by its customers simply because it sells infringing products to its customers, damages assessed for indirect infringement normally will be the same as damages that would be assessed had the patentee sued and obtained a judgment against the customers." *Glenayre Electronics, Inc. v. Jackson*, 443 F.3d 851, 858-59 (Fed. Cir. 2006). "A patentee who suffers lost profits or loss of royalty income ordinarily can be compensated and made whole by the manufacturing infringer. In the usual course of events, the length of the accused manufacturer's distribution chain should have no impact on the patentee's ability to be made whole by the manufacturer." *Id.* at 859 (citing Jerry R. Selinger & Jessica W. Young, *Suing an Infringing Competitor's Customers: Or, Life under the Single Recovery Rule*, 31 J. Marshall L. Rev. 19, 52 (1997)). Thus, Seoul's foreign sales are essential in calculating Nichia's damages.

As noted by the court in *Novartis Pharms. Corp. v. Abbott Labs.*, 203 F.R.D. 159 (D. Del. 2001), where foreign sales and marketing documents are requested because they will reveal the extent of infringement and facilitate damages calculations, documents relating to foreign sales and marketing must be produced. *Id.* at 164 ("[P]roduction of only domestic sales and marketing documents is inadequate and does not satisfy its burden under Rule 26(b)(1) to produce all relevant non-privileged documents.").

The court in *Novartis Pharms. Corp. v. Abbott Labs.*, 203 F.R.D. 159, 164 (D. Del. 2001), granted a motion to compel production of foreign sales records because the documents would facilitate damages calculations and reveal the extent of infringement. The court held that "production of only domestic sales and marketing documents is inadequate and does not satisfy its burden under Rule 26(b)(1) to produce all relevant non-privileged documents." *Novartis* at 164. The situation is identical in the present case. Seoul Korea should not be permitted to avoid discovery of the extent of its infringement of Nichia's patents. The requested information is relevant to the issues in this suit, and production of that information should be ordered.

### 3. Information Related to Foreign Sales Are Relevant to the Non-Obviousness

In its Answer and Counterclaims, Seoul alleges an affirmative defense and counterclaim for declaratory judgment of invalidity under 35 U.S.C. §§ 102 and 103. Section 103 of the Patent Code provides: "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title [35 U.S.C. 102], if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103.

It is well-settled that secondary considerations such as commercial success are relevant to the obviousness or non-obviousness of a patent. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966). Indeed, the Federal Circuit has held that such secondary considerations must <u>always</u> be considered in a determination of obviousness. *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538-39 (Fed. Cir. 1983). ("It is jurisprudentially inappropriate to disregard any relevant evidence on any issue in any case, patent cases included. Thus evidence rising out of the so-called 'secondary considerations' must always when present be considered en route to a determination of obviousness. … It is to be

*Nichia Corp. v. Seoul Semiconductor, Co., et al.*,
Case No. 3:06-CV-0162-MMC (JCS) (N.D. Cal.)

United States Magistrate Judge Joseph C. Spero
November 13, 2006
Page 11

considered as part of all the evidence, not just when the decisionmaker remains in doubt after reviewing the art.") (internal citations omitted).

Further, courts have routinely held that foreign sales showing the commercial success of a product outside the U.S. are relevant to the issue of non-obviousness.  *See Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 730 F.2d 1452, 1461 (Fed. Cir. 1984) ("A showing of commercial success of a claimed invention, wherever such success occurs, is relevant in resolving the issue of non-obviousness."); *Murata*, 422 F. Supp. 2d at 943-44 (granting motion to compel discovery of commercial success both within and outside the United States); *Mixing Equip. Co. v. Innova-Tech, Inc.*, 1986 U.S. Dist. LEXIS 21134 at *7-8 (E.D. Penn. 1986) (same); *AMP Inc. v. Molex Inc.*, 1988 U.S. Dist. LEXIS 4142 at *1 (N.D. Ill. 1988) (same).

Accordingly, Seoul's foreign sales are relevant to its own allegations of invalidity based on obviousness, and are therefore discoverable.  Despite Seoul's allegations of invalidity based on Section 103 in its Answer and Counterclaims, Seoul now argues that it has not claimed obviousness as a defense.  In light of this assertion, Nichia will agree that if obviousness is not at issue in this case, discovery related to foreign sales is not relevant to this litigation on the basis of obviousness.  Nonetheless, such discovery is still relevant to this litigation for the other reasons set forth herein.

## 4. Information Related to Foreign Sales Are Relevant To Ornamentality

In its Answer and Counterclaims, Seoul alleges that the patents-in-suit are invalid for failure to meet one or more of the requirements for patentability under 35 U.S.C. § 171.  Section 171 of the Patent Code provides: "Whoever invents any new, original, and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 171.

Federal courts have sometimes re-stated the ornamentality requirement as: whether the design is "a matter of concern" to customers.  *See, e.g.*, *Seiko Epson Corp. v. Nu-Kote Int'l, Inc.*, 190 F.3d 1360, 1368-69 (Fed. Cir. 1999); *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1451 (Fed. Cir. 1993); *In re Webb*, 916 F.2d 1553, 1557(Fed. Cir. 1990).  Evidence of whether a design is a "matter of concern" to customers may include evidence that the features of the device were displayed in advertisements and displays at trade shows.  *See In re Webb*, 916 F.2d at 1557.

The ornamentality of the designs at issue, however, is not limited to whether the design is a "matter of concern" to U.S. customers only.  Indeed, whether the appearance and design of the LEDs are a "matter of concern" to customers, is applicable to both U.S. and foreign customers.  By refusing to respond to Nichia's discovery requests seeking documents and information related to Seoul's advertising, promotion and marketing of the accused products outside the U.S., Seoul Semiconductor improperly attempts to preclude Nichia from obtaining information relevant to the issue of ornamentality of the patents-in-suit.

In addition, in its Amended Answer, Seoul Korea alleges that it has only made one sale of the 902 series LEDs in the U.S. to NanoScience Exchange.  Whether or not this is true, precluding discovery on Seoul Korea's advertisements, presentations, and displays at trade shows outside this

11

*Nichia Corp. v. Seoul Semiconductor, Co., et al.*,
Case No. 3:06-CV-0162-MMC (JCS) (N.D. Cal.)

United States Magistrate Judge Joseph C. Spero
November 13, 2006
Page 12

single U.S. sale would prevent Nichia from obtaining discovery necessary to refute Seoul's affirmative defense and defend against its counterclaims alleging invalidity of the patents-in-suit.

Seoul argues that it markets the functional features of its products, not its ornamentality. However, this is an issue of fact on which discovery is needed.  Neither Nichia nor the Court should rely on Seoul's self-serving statements.  Seoul also argues that Seoul has previously produced worldwide marketing materials for the 902 series LED.  Seoul, however, has only produced 132 pages of documents.  Seoul clearly has withheld documents which it alleges it has agreed to produce.

In sum, documents evidencing whether the design of the accused LEDs is a "matter of concern" to Seoul Korea's customers, including advertisements, promotional and marketing materials distributed outside the U.S., are relevant to Seoul's allegations of invalidity based on lack of ornamentality, and are therefore discoverable.

### B.  Seoul's Position

Nichia seeks discovery of Seoul's foreign sales.  Seoul will not produce such material because it is not reasonably likely to lead to relevant evidence, is incredibly burdensome to produce and is extremely sensitive and confidential.[5]

#### 1.  The requested discovery is neither relevant nor likely to lead to relevant evidence

Under the Federal Rules of Civil Procedure, courts are required to weigh the burden and expense of the proposed discovery against its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake, and the importance of the proposed discovery in resolving the issue.  Fed. R. Civ. Pro. 26(b)(2)(iii).

#### a)  Legal standard for inducement to infringe

The only ground on which Nichia could conceivably recover damages for sales of Seoul products outside the United States is inducement to infringe.  That claim is not remotely viable here. To prevail on a claim of active inducement, Nichia must show that (1) there has been direct infringement in the United States and (2) Seoul "knowingly induced infringement and possessed specific intent to encourage another's infringement."  *MEMC Electronic Materials, Inc.* v. *Mitsubishi Materials Silicon Corp.,* 420 F.3d 1369, 1378 (Fed. Cir. 2005).

---

[5] Nichia, a Japanese company, is suing Seoul, a Korean company, in the Northern District of California, seeking discovery of documents located in South Korea for activity that has purportedly taken place in Korea, China, Taiwan and other counties in East Asia.  It is a tremendous waste of federal court resources to have two foreign companies fighting for foreign discovery here in the Northern District of California.  If Nichia's allegations are true, why not bring an action in Korea or China, where the allegedly illicit activities have occurred?

*Nichia Corp. v. Seoul Semiconductor, Co., et al.,*
Case No. 3:06-CV-0162-MMC (JCS) (N.D. Cal.)

United States Magistrate Judge Joseph C. Spero
November 13, 2006
Page 13

Under the first prong, the direct infringement must be by a third party who was induced by the alleged inducer. *Crystal Semiconductor Corp. v. TriTech Microelectronics Intern., Inc.,* 246 F.3d 1336, 1351 (Fed. Cir. 2001) (party being induced must directly infringe); *cf. Faroudja Laboratories, Inc. v. Dwin Electronics, Inc.,* 1999 WL 111788, *5-7 (N.D. Cal. 1999)(where the court found no direct infringement of plaintiff's patent by a third party, the court held that defendant could not induce infringement).

For the second prong, Nichia must show intent. *Manville Sales Corp. v. Paramount Sys., Inc.,* 917 F.2d 544, 553 (Fed. Cir. 1990) (It must be established that the defendant possessed specific intent to encourage another's infringement and not merely that the defendant had knowledge of the acts alleged to constitute inducement. The plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts and that he "knew or should have known his actions would induce actual infringement."); *see also Hewlett-Packard Co. v. Bausch & Lomb,* 909 F.2d 1464, 1469 (Fed. Cir. 1990)("[P]roof of actual intent to cause the acts which constitute the infringement is a necessary prerequisite to finding active inducement."). Intent requires an affirmative act. *Tegal Corp. v. Tokyo Electron Co., Ltd.*, 248 F.3d 1376, 1378-79 (Fed. Cir. 2001); *A. Stucki Co. v. Worthington Industries, Inc*., 849 F.2d 593, 597 (Fed. Cir. 1988) (mere inaction cannot constitute inducement).

> **b)    The discovery at issue will not benefit Nichia because direct infringement by a third party is impossible**

Nichia cannot meet the first prong of the inducement claim. Not only has it not induced a direct infringer, there is no direct infringer whom Seoul could have induced. Seoul has never sold any side view LED products to a company who then imported directly into the United States.[6] Seoul also does not know the end products in which its LEDs will be placed nor their ultimate destination.[7] It, therefore, cannot be liable for active inducement. *Crystal Semiconductor,* 246 F.3d at 1351("[i]nducement only occurs if the party being induced directly infringes the patent.").

Seoul's accused LEDs are tiny and completely buried in any product containing them that is directly sold into the United States. Seoul has never sold any 902 series (or 903, 1002 and 1003 series LEDs) product to a manufacturer that in turn directly imported the component into the United States. Nichia cites several cases discussing liability of a foreign manufacturer who sells to a third party that imports an accused product into the United States. Selling an electronic device which *may* contain, as one of hundreds of hidden subparts, an accused product is hardly the same kind of

---

[6] Nichia's argument that Seoul is not immune from patent liability because it "first sells its products to a middle-man" obfuscates the truth. Seoul does not sell to "middle-men" who turn around and sell the accused product in the United States. Seoul sells to foreign manufacturers who incorporate the side-view LED into a larger component, which in turn is inserted into either another component or the end product.

[7] If this Court so desires, Seoul is prepared to submit declarations to support all of its factual assertions in this letter. Seoul was not able to obtain translated declarations in the time allotted for this joint letter.

*Nichia Corp. v. Seoul Semiconductor, Co., et al.,*
Case No. 3:06-CV-0162-MMC (JCS) (N.D. Cal.)

United States Magistrate Judge Joseph C. Spero
November 13, 2006
Page 14

importing envisioned in these cases.  Seoul sells its LEDs to BLU and LCD module manufacturers in Asia, who in turn sell them to cell phone, MP3 or PDA manufacturers in Asia.  Only then, if at all, are the products imported into the United States.  Thus, Nichia cannot meet the direct infringement prong of the active inducement test.

**c)       Seoul lacks the requisite intent to induce**

In addition, Seoul cannot have knowingly induced or intended to induce a third party to infringe the patents-in-suit. When Seoul sells its LED products to its customers (BLU and LCD manufacturers), it does not know to whom these manufacturer-customers will sell their components. Nor does it know the ultimate consumer products in which the LEDs will be inserted, and where they will be sold.  Seoul certainly has no idea whether the LED product it sells will wind up in the United States.  As a result, Seoul cannot *intend* to or *knowingly* induce infringement.[8]

Because there are no circumstances under which Seoul could be found to have induced infringement in the United States, there is no conceivable reason why its foreign sales would be relevant.  Nor is it likely that discovery of foreign sales will lead to discoverable evidence.  At most, they would reveal the total foreign sales of LEDs to all foreign customers.  Nichia would then have to take discovery of those foreign customers to determine to whom they sell their components to and whether any of those components end up in the United States.  Because those customers in turn sell their components to other foreign manufacturers, Nichia would then have to take discovery of them. There is absolutely no law that finds liability under these circumstances, and no chance that the United States Patent Act will be found to have such broad ranging reach.[9]  Accordingly, Nichia's discovery request must be denied.

**d)       If the two threshold questions are not met, the question of extraterritoriality is superfluous.**

Nichia relies on authorities standing for the proposition that there are no territorial limitations to liability for induced infringement. In doing so, it grossly overstates the holding in these cases. For example, in *Honeywell, Inc. v. Metz Apparatewereke*, 509 F. 2d 1137 (7th Cir. 1975), the court states that "active inducement may be found in events outside the United States, if they result in a direct infringement here." *Id* at 1141.  Nichia chooses to focus on the first half of this quote, to the exclusion of the second portion.  *Honeywell* and other cases like it allow for extraterritoriality *when* a plaintiff can prove that the induced party directly infringed the patent-in-suit in the United States. Here, Nichia can proffer no such proof.  Because the allegedly infringing produce is not directly sold

---

[8] *See* FN 7.

[9] Nichia suggests that *Murata Mfg. Co. v. Belfuse, Inc.,*  422 F. Supp. 2d 934, 944-46 (D. Ill. 2006) entitles it to the requested discovery, and that the facts in *Murata*  are similar to those here. But *Murata's* broad scope of discovery relies on the pre-2000 amendment Federal Rule of Procedure 26.  In a subsequent Northern District of Illinois case, the court disagrees with Murata's broad scope of discovery, stating " that Murata relies on authority that significantly predates the 2000 amendment to Rule 26(b)(1). "  *American Roller Coaster v. Foster Adams Leasing, LLP* 2006 WL 1371441, * 2 (N.D.Ill. 2006).

14

*Nichia Corp. v. Seoul Semiconductor, Co., et al.*,
Case No. 3:06-CV-0162-MMC (JCS) (N.D. Cal.)

United States Magistrate Judge Joseph C. Spero
November 13, 2006
Page 15

into the United States, but rather is a sub-component part of a larger consumer item sold into the States several sales later, it *cannot* infringe.

Put another way, these two prongs (intent to induce and proof that induced party directly infringed) are threshold issues. Nichia's own authority, *Cybiotronics, Ltd. v. Golden Source Electronics Ltd.,* 130 F. Supp. 2d 1152 (C.D. Cal. 2001), suggests that these two threshold prongs must be met before the question of whether liability premised on extraterritorial conduct can be reached. *Id*. at 1165 (holding that where defendant did not have the requisite intent to induce, the question of extraterritoriality need not be reached). Where, as here, Nichia cannot possibly prove the two threshold issues, the subsequent question of extraterritoriality need not be analyzed. Thus, Nichia should not be able to take extraterritorial discovery.

### 2. The requested discovery is so burdensome it outweighs any potential benefit the information might provide

Courts are required to balance the benefit of requested discovery with its expected burden. Fed. R. Civ. Pro. 26 (b)(2)(iii). "[W]hen requests approach the outer bounds of relevance and the information requested may marginally enhance the objectives of providing information to the parties or narrowing the issues, the court must weigh the request with hardship to the party from whom discovery is sought." *Carlson Cos. v. Sperry and Hutchinson Co.*, 374 F. Supp. 1080, 1088-89 (D. Minn. 1973); 8 WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 2040, p. 519 (1994).

The physical burden of gathering and producing this evidence will be tremendous. Seoul sells *millions* of LEDs a month to many different customers. Records related to foreign sales of potentially multiple products, marketing materials, etc. will be difficult and very costly to track down, review and produce.[10] It is particularly burdensome here because the documents are located in Korea, written in Korean and electronically stored. Thus, SSC will have to incur the enormous expenses of employing a vendor to travel to Korea, who can collect and process the electronic documents, and then hiring bi-lingual translators and/or Korean attorneys to review the documents for relevance prior to production.

Additionally, non-parties, like the customers who purchase Seoul's side-view LEDs, will be burdened if Nichia prevails. If this discovery is permitted, Nichia will propound document requests, interrogatories, and deposition notices on many of Seoul's customers, all of whom are non-parties and located in Korea, China, Taiwan and Singapore, among other places. Nichia cannot establish damages for US sales unless and until it takes discovery of every manufacturer in the long distribution chain for electronic products that ultimately are sold in the United States. The documents that each of these non-parties would be required to produce are all confidential records and will be voluminous.[11] Moreover, the cost such non-parties will have to incur to retain legal

---

[10] See FN 7.

[11] If Nichia is even permitted to take this discovery. Discovery of non-parties is not allowed in many Asian countries, such as Japan. For those customers in those countries, SSC's sales information cannot conceivably lead to the discovery of potentially relevant evidence.

*Nichia Corp. v. Seoul Semiconductor, Co., et al.,*
Case No. 3:06-CV-0162-MMC (JCS) (N.D. Cal.)

United States Magistrate Judge Joseph C. Spero
November 13, 2006
Page 16

counsel for depositions and document production are very high and outweighs any use Nichia will make of the information it receives.

Finally, these requests seek extremely sensitive information.  Foreign LED markets, such as the LED market in Asia, are fiercely competitive.  Nichia and Seoul Semiconductors are <u>direct</u> rivals in this market.  Asking Seoul to release to Nichia detailed information about the price, quantity, and kind of LED goods it sells to a particular customer is like asking the White House to share secrets with the Kremlin.

A balancing of the burden of this discovery with its likely benefit leads to a simple conclusion:  discovery of foreign sales and related materials should <u>not</u> be allowed.

<b>3. Seoul does not claim obviousness.</b>

Nichia suggests that it needs foreign sales related documents to show commercial success as a rebuttal to Seoul's claim of obviousness.  But Seoul is no longer claiming obviousness.  Seoul *has* alleged that Nichia's patents-in-suit are invalid, but these invalidity claims are rooted in the design patent tests of "hidden-in-use" and functionality.

<b>4. Seoul's foreign sales documents are not related to ornamentality.</b>

Nichia suggests evidence that the customers of the accused products viewed certain features as a "matter of concern" will be gleaned from a review of foreign sales documents.  Not so.  The ornamental features of Nichia's patents-in-suit are at issue here, not the features of Seoul's products.  Seoul's position is that a tiny LED like the 902 series side view does not have ornamental features -- just functional ones.  Documents regarding Seoul's foreign sales would not reveal this information.  Seoul has previously produced worldwide marketing materials for the 902 series. That is the relevant information, and Seoul has already produced it to Nichia.

**C. <u>Proposed Compromise</u>**

Neither  party has proposed a compromise on the issue of discoverability of documents and information related to Seoul's foreign sales.

**III. <u>Discoverability by Nichia of Seoul's Products Other Than Those Specifically Accused and Identified In The Complaint</u>**

Nichia has requested production of material relating to certain Seoul LED products other than the products specifically accused and identified in the complaint.  Specifically, the Complaint identifies Seoul's 902 series LEDs, and Nichia has requested information relating to the 902 series and the 903 series, 1002 series, and 1003 series LEDs.  Seoul refuses to produce information on the 903 series, 1002 series, and 1003 series LEDs, because it argues that these are not accused products and are not named in the Complaint.

*Nichia Corp. v. Seoul Semiconductor, Co., et al.*,
Case No. 3:06-CV-0162-MMC (JCS) (N.D. Cal.)

United States Magistrate Judge Joseph C. Spero
November 13, 2006
Page 17

### A.   <u>Nichia's Position</u>

Documents related to accused products not specifically identified in the complaint are discoverable because they are relevant.  The Complaint in this lawsuit put the defendants on notice that the allegations of infringement were not limited to the 902 series of LEDs.  The Complaint repeatedly alleges that the Seoul has "made, used, imported, sold and/or offered for sale products that infringe the [patents-in-suit *including but not limited to* products designated in the '902' series."

Seoul's refusals to produce the relevant requested material have been based on its denigration of Nichia's requests as a "fishing expedition into a litany of [Seoul Semiconductor's] products." However, Nichia requests information about three additional products *specifically identified by part number*, including the 903, 1002 and 1003 series LEDs.  It is difficult to imagine how such specific requests constitute a "fishing expedition into a litany of [Seoul Semiconductor's] products."

Because discovery is designed to help define and clarify the issues, because discovery is not limited to the merits of the case, because there is no requirement that infringing articles be identified with particularity in the Complaint, and because the purpose of discovery is to permit inquiry into relevant areas, the requested information is discoverable.

### 1.   The Requested Information About the Accused Products is Discoverable

Where the accused products are not all specifically identified in the Complaint, and where the plaintiff identifies some accused products using the phrase "including without limitation," information about products not specifically identified is discoverable.  *See Eolas Techs. Inc. v. Microsoft Corp.*, 65 U.S.P.Q.2d 1090 (N.D. Ill. 2002) (granting a motion to compel discovery related to products not identified in the complaint where the complaint alleged infringement by products "including without limitation" certain identified products).

Similarly, in *Kemin Foods, L.C. v. Pigmentos Vegetables Del Centro S.A. De C.V.*, _ F.3d _, 2006 U.S. App. LEXIS 24246 (Fed. Cir. Sept. 25, 2006), the complaint broadly alleged that the defendant was infringing two patents, "*including without limitation* claim 1" of both patents.  The plaintiff "diligently pursued discovery to ascertain whether [the defendant's] process implicated [an additional] claim."  *Id.* at *26-27 (emphasis in original).  The court ruled that the complaint was broad enough to put the defendant on notice of the charge of infringement of all of the claims of the two patents.  *Id.* at * 26.

Given the minimal recitation of facts required by notice pleading, "discovery is not even limited to issues raised by the pleading, because discovery itself is designed to help define and clarify what the issues are."  *Murata*, 422 F. Supp. at 945.  Where, as here, Seoul was clearly put on notice that the 902 series of LEDs was not the only accused product, and where Nichia has specifically identified products for which it requests discovery, Nichia should be permitted to obtain the discovery that it reasonably requests.

United States Magistrate Judge Joseph C. Spero
November 13, 2006
Page 18

### 2. There Is No Requirement That Accused Products Be Specifically Identified In The Complaint

The Federal Rules of Civil Procedure require only notice pleading. Fed. R. Civ. P. 8(a). Pursuant to the Federal Rules of Civil Procedure, the following allegation of patent infringement is sufficient for purposes of Rule 8(a): "Defendant has for a long time past been and still is infringing [plaintiff's] Letters Patent by making, selling and using electric motors embodying the patented invention, and will continue to do so unless enjoined by this court." *See* Appendix of Forms to Fed. R. Civ. P. Form 16; *see also* Fed. R. Civ. P. 84. Following the Federal Rules, all Nichia must allege is infringement by "[LEDs] embodying the patented invention." *Cf.* Dkt. No. 69 at 2-3 (May 9, 2006 Order) ("Nichia's allegations that Creative Defendants are infringing Nichia's patents by selling consumer products containing a specific type of LED, the '902 series' manufactured by SSC, is at least specific, if not more so, than 'electric motors embodying the patented invention.'").

To prohibit Nichia from conducting discovery about accused products not specifically identified in the Complaint is to punish Nichia for supplying more information than required by Rule 8 and Form 16. Nichia should be permitted to conduct discovery on all devices that it reasonably believes infringe the patents-in-suit. If Seoul believes that the 903, 1002 and 1003 series LEDs do not infringe Nichia's patents, Seoul will have opportunity to defend those products in this lawsuit.

### 3. The Relevance Of The Accused Products Is Apparent In Design Patent Cases

Since this is a design patent case, the relevance of Seoul's 903, 1002 and 1003 series LEDs is readily apparent from a mere visual inspection of the products. Under design patent law, one of tests of infringement is the "ordinary observer" test, which requires that the court answer the following inquiry:

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Gorham Co. v. White*, 81 U.S. (14 Wall) 511, 528 (1871).

While an infringement determination may be premature at this stage of the litigation, comparisons of Seoul Korea's 903, 1002 and 1003 series LEDs with the figures of the patents-in-suit show that these designs are at least relevant to this lawsuit. By way of example, attached as Exhibit 1 are photographs of Seoul Korea's 903 series LEDs compared to the figures of U.S. Patent No. D503,388 (the "'388 patent").[12] At the request of Nichia's counsel, NanoScience Exchange

---

[12] The broken lines shown in the figures of the '388 patent are not part of the claimed design, but are merely shown for illustrative purposes. *Contessa Food Prods. Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1378 (Fed. Cir. 2002) ("If features appearing in the figures are not desired to be claimed,

*Nichia Corp. v. Seoul Semiconductor, Co., et al.*,
Case No. 3:06-CV-0162-MMC (JCS) (N.D. Cal.)

United States Magistrate Judge Joseph C. Spero
November 13, 2006
Page 19

purchased the 903 series LEDs from Seoul Korea in the U.S. at the same time it purchased the 902 series LEDs. Similarly, Exhibit 1 also shows schematic drawings of Seoul's 1002 and 1003 series LEDs from Seoul's publicly available specifications compared to the figures of the '388 patent.

As these comparisons show, Seoul Korea's 903, 1002 and 1003 series LEDs are at the very least arguably similar to Nichia's patents-in-suit and are relevant to Nichia's claims of patent infringement against Seoul. As such, Nichia is entitled to discovery related to these three additional products.

### 4.   Nichia's Pre-Filing Investigation

Seoul makes the grave charge that "Nichia has also violated Federal Civil Procedure Rule 11" by not conducting a pre-filing investigation. First, Nichia confirms that it has conducted a pre-filing analysis on the 902 and 903 series LED. In fact, Seoul sold these products directly to NanoScience Exchange in the U.S. Seoul must now know that such purchase in the U.S. was to investigate Seoul's infringement. Second, the 1002 and 1003 series LEDs were not found on Seoul's website at the time it conducted its pre-filing investigation. After the Complaint was filed, Nichia discovered these products, conducted an infringement analysis of these products, and included them in discovery requests. Nichia is entitled to discovery of such later-discovered infringing products.

### B.   <u>Seoul's Position</u>

Nichia seeks broad discovery of three product series that it did not name in its complaint. Indeed, Nichia has never alleged that the '903, '1002 and '1003 products infringe the patents-in-suit. Yet somehow Nichia believes it is entitled to full discovery of the three series although it has not, and cannot, allege that these series are "made, used, imported, sold and/or offered for sale" in the United States, a prerequisite to both direct infringement and active inducement claims. 35 U.S.C. § 271. Nichia must not be allowed to use this litigation to launch a fishing expedition into Seoul's products. Moreover, Nichia is required to perform a pre-filing analysis of all products it intends to accuse. It should not be allowed to use the notion of broad discovery to circumvent this well-established obligation.

The scope of discovery allowed under the Federal Rules of Civil Procedure has been restricted in recent years. *See American Roller Coaster v. Foster Adams Leasing, LLP*, 2006 WL 1371441 (N.D. Ill. 2006) at 3 ("The 2000 amendment to Rule 26(b)(1) "signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." Advisory Committee Notes to 2000 Amendment to Rule 26(b)(1).). "[T]he standard of relevancy is not so liberal as to allow a party to . . . explore matter which does not presently appear germane on the theory that it might conceivably become so." *Food Lion, Inc. v. United Food & Comm'l Workers Int'l Union, AFL-CIO-CLC*, 103 F. 3d 1007, 1012-1013 (D.C. Cir. 1997) (internal quotes omitted) (citing *In re Fontaine*, 402 F. Supp. 1219, 1221 (E.D.N.Y. 1975)

---

the patentee is permitted to show the features in broken lines to exclude those features from the claimed design.").

*Nichia Corp. v. Seoul Semiconductor, Co., et al.*,
Case No. 3:06-CV-0162-MMC (JCS) (N.D. Cal.)

United States Magistrate Judge Joseph C. Spero
November 13, 2006
Page 20

(overturning grant of discovery citing burden and no likelihood that useful evidence might be uncovered).  Here, Nichia did not name any of these three products in its complaint.  Nor could it.  Other than the sale of the 903 series it orchestrated through its agent, Nichia cannot allege that Seoul either directly infringed or induced infringement of Nichia's patents in the United States.  Thus, Nichia cannot fulfill its Rule 11 obligation that the allegations either have evidentiary support or are likely to have evidentiary support after further investigation.  Fed. R. Civ. Pro. 11(b)(3).

The cases Nichia cites for the proposition that information about products not named in the case is discoverable are inapposite.  In *Eolas Technologies Inc. v. Microsoft Corp.*, 65 U.S.P.Q.2d 1090, *89-90 (N.D. Ill. 2002), plaintiff alleged infringement by Internet Explorer "for any platform," and by Microsoft Windows computer software products, including without limitation, Windows NT and Windows 2000 "and several other Windows versions between and more recent."  The *Eolas* Court permitted discovery on additional server versions that incorporated or integrated Internet Explorer, a product specifically named in the complaint.  By contrast, here, the 902 series that Nichia names does not incorporate or integrate the other series Nichia now wants to include.  Nichia simply wants to expand discovery to a broad range of SSC products.

*Kemin Foods, L.C. v. Pigmentos Vegetables Del Centro S.A. De C.V.*, __F. 3d __, 2006 US App. LEXIS 24246 (Fed. Cir. 2006), is similarly inapposite.  Nichia cites *Kemin* as though it holds that a plaintiff need not accuse a product to get discovery on it.  But that is not what *Kemin* is about.  *Kemin* holds that a complaint alleging certain claims on two specific patents was enough to put a defendant on notice of the potential for infringement of a different claim of the same patent, even if that claim had not been specifically named.  It does not hold that a plaintiff may use litigation against one kind of product to obtain discovery on a series of other, non-accused, products.

If documents and information about the 903, 1002 and 1003 series of LEDs are germane and reasonably likely to lead to relevant evidence, Nichia should have named the products in its complaint.  If Nichia performed the required pre-filing analysis of these products (*see View Engineering*), Nichia should have officially accused the 903, 1002 and 1003 series LED products.  It did not.  Nichia cannot rely on its argument that "the relevance of the accused products is apparent in design patent cases" to escape its pre-filing analysis obligations.  This Court should not allow Nichia to use the 902 series litigation and the doctrine of broad discovery to avoid the bedrock requirement of performing an infringement analysis for every accused product and launch a fishing expedition into all other Seoul products.

## C.     **Proposed Compromise**

Neither party has proposed a compromise on the issue of discoverability of documents and information related to Seoul's products not specifically identified in the Complaint.

## IV.   **Discoverability by Nichia of Seoul's Sales and Marketing Documents Before Issuance of Patents-In-Suit**

Nichia has requested certain sales and marketing material "at all times since January 1, 2001."  In response, Seoul has stated that it will not respond to certain requests which, in its view, request sales and marketing documents related to damages not legally recoverable by Nichia because

*Nichia Corp. v. Seoul Semiconductor, Co., et al.,*
Case No. 3:06-CV-0162-MMC (JCS) (N.D. Cal.)

United States Magistrate Judge Joseph C. Spero
November 13, 2006
Page 21

they pre-date the issuance of the patents-in-suit.[13]  Each party's substantive position and proposed compromise are set forth below.

### A.     Nichia's Position

Seoul's refusal to produce pre-issuance information contravenes the Federal Rules of Civil Procedure and applicable case law.  Rule 26(b)(1) of the Federal Rules of Civil Procedure permits "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party…."  Courts have confirmed that pre-issue documents are relevant and are discoverable.  Here, the information requested during the time period before issuance of the patents-in-suit is relevant to a number of issues.

Court have confirmed that pre-issue documents are not shielded from production.  In *Conopco, Inc. v. Warner-Lambert Co.*, 2004 U.S. Dist LEXIS 1605, *17 (D. N.J. 2000) the accused infringer, like Seoul, refused to produce documents from before the issuance of the asserted patents. The court concluded "that pre-issuance … information may be relevant or may lead to the discovery of information relevant to infringement and should be produced."  *Id*.  For example, pre-issuance documents may be relevant to "issues surrounding the function and operation of the [accused] devices or lead to information that is."  *Id*.  Here, like in *Conopco*, the function and operation of the accused devices is relevant, as discussed below.  The court in *Enger-Kress Co. v. Amity Leather Products Co*., 18 F.R.D. 347, 348 (E.D. Wis. 1995) was also faced with an accused infringer that refused to produce pre-issuance documents.  The court held that even though pre-issuance activities did not constitute a cause of action "this fact does not drop a legal curtain over events occurring prior to issuance of a patent."  *Id*.  The court reasoned that "the discovery procedure provided in the Federal Rules of Civil Procedure are extremely broad and are to be liberally applied."  *Id*.  This case is no exception.  Notably, Seoul has not cited to a single case precluding  such discovery.  Seoul attempts to distinguish *Conopco* and *Enger-Kress* by arguing that the documents at issue "were not damages documents."  This argument misses the point.  The documents requested by Nichia are not solely relevant to damages.  Instead, they are relevant to a variety of issues, as discussed below.

*First*, documents from January 1, 2001, onwards, are relevant to show the function and operation of the accused devices.  *See Conopco*, 2004 U.S. Dist LEXIS 1605 at *17.  The function and operation of the accused devices are relevant to rebut Seoul's defense of lack of ornamentality. Specifically, the function and operation of the accused devices is relevant to rebut any argument that features of the accused products are functional as opposed to ornamental.

*Second*, pre-issuance information is relevant to the commercial success of the LEDs at issue. Evidence of commercial success is a secondary consideration that can be used to rebut a charge of obviousness.  *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).  As such, sales information is relevant to Seoul's affirmative defense and counterclaim alleging invalidity based on obviousness.  It does not matter whether the sales information is pre-issuance or post-issuance, because it is relevant used only to show commercial success.  Indeed, there is no "legal curtain over events occurring prior

---

[13] Seoul has agreed to produce other pre-issuance documents which, in its view, do not relate to damages, such as documents related to the design of the 902 series LEDs and the prior art.

*Nichia Corp. v. Seoul Semiconductor, Co., et al.,*
Case No. 3:06-CV-0162-MMC (JCS) (N.D. Cal.)

United States Magistrate Judge Joseph C. Spero
November 13, 2006
Page 22

to issuance of a patent." *Enger-Kress*, 18 F.R.D. at 348. Thus, the existence of a patent is not a requirement.

*Third*, documents and information related to advertisements, promotional materials and marketing materials distributed to Seoul's customers are relevant to the issue of ornamentality of the claimed design. Federal courts have sometimes re-stated the ornamentality requirement as: whether the design is "a matter of concern" to customers. *See, e.g.*, *Seiko Epson Corp. v. Nu-Kote Int'l, Inc.*, 190 F.3d 1360, 1368-69 (Fed. Cir. 1999). Evidence of whether a design is a "matter of concern" to customers may include evidence that the features of the device were displayed in advertisements and displays at trade shows. *See In re Webb*, 916 F.2d at 1557. As such, marketing materials, whether pre- or post-issuance, are relevant to Seoul's affirmative defense and counterclaim alleging invalidity based on lack of ornamentality.

*Fourth*, pre-issuance sales and marketing information is relevant to the issue of Seoul Korea's liability for induced infringement. Specifically, pre-issuance sales and marketing information can be used to demonstrate that Seoul Korea specifically marketed the accused products for the U.S. market and intended the accused products to be used here. In that regard, inducement occurs <u>before</u> the sale in induced infringement. Therefore, the conduct before an infringing sale, including conduct in the pre-issue time period, is relevant to the issue of liability for induced infringement. At the least, such documents are likely to lead to the discovery of admissible information.

Seoul argues that the pre-issuance documents are not being produced, because Nichia "cannot seek damages for harm caused *before* [issuance of the patents-in-suit]." However, this argument is inapposite. Even if pre-issuance information is not relevant for damages, it is relevant for a variety of other reasons, as discussed above. On that basis alone, it should be produced. In addition, pre-issuance information is relevant, or likely to lead to the discovery of relevant information, for calculation of damages. Because pre-issuance information is relevant to a number of issues in this case, Seoul should be compelled to produce the requested pre-issuance information.

## B.   <u>Seoul's Position</u>

Federal law expressly provides that infringement can only occur *during the term* of the patent. 35 U.S.C. § 271(a). As such, damages are not available outside that term. *Id., Foster v. American Mach. & Foundry Co.*, 492 F.2d 1317, 1323 (2d Cir.) *cert. denied*, 419 U.S. 833 (1974)(sale of an infringing product before a patent is issued does not constitute infringement or inducement to infringe) (*citing Coakwell v. United States*, 178 Ct. Cl. 654, 658 (Ct. Cl. 1967). The term of patent protection runs from the date of issuance; therefore no suit to enforce a patent right may be maintained until after the patent has issued. *Johnson v. Hughes Invest., Inc.*, 699 F. Supp. 1453, 1455 (D. Or. 1988).

Indeed, to collect damages for patent infringement, a patent holder must first give proper notice of the patent rights to any alleged infringer. Damages for infringement only become available once the alleged infringer is on notice of the patent and of the allegedly infringing activity. *See American Medical Systems, Inc. v. Medical Engineering Corporation*, 6 F.3d 1523, 1536-38

United States Magistrate Judge Joseph C. Spero
November 13, 2006
Page 23

(Fed.Cir.1993). The burden of pleading and proving notice lies with the patent owner. *See Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1111-12 (Fed.Cir.1996).

Here, the patents issued in June 2004. The earliest Seoul was apprised of the '538 patent was March 12, 2005. Seoul did not know about the other three patents-in-suit until the complaint was filed. Seoul should not be required to incur the tremendous burden and expense of searching for, collecting, processing, reviewing and producing in Korea documents before that date. Nonetheless, it already has agreed to produce documents from June 2004. Nothing further should be required.

Nichia cites two cases in support of its claim to pre-issuance documents. One, *Conopco, Inc. v. Warner-Lambert Co.,* 2000 U.S. Dist. LEXIS 1605 (D.N.J 2000), it cites for the proposition that pre-issuance information may be relevant to issues in the case and should be produced. But Nichia fails to point out that the documents at issue in *Conopoco* were not damages documents, they were design-related, the kind of documents Seoul already agrees it will produce. The second case, *Enger-Kress Co. v. Amity Leather Products Co.,* 18 F.R.D. 347, 348 (E.D. Wis. 1995), Nichia cites for the proposition that "a legal curtain does not drop over events occurring prior to issuance of a patent." Again, the documents at issue in *Enger-Kress* were not damages documents. Furthermore, the *Enger-Kress* court, after making the quoted statement, summarily denied movants' claim to pre-issuance documents.

Nichia did not perfect notice of its patent rights until spring of 2005. Even so, Seoul only refuses to provide discovery in response to requests that are clearly calculated to lead to damages-related information, like sales and marketing data, *before the patent issued* in June 2004. Seoul's position is more than reasonable. Seoul has agreed to produce discovery on topics that stretch back before 2004, such as the kind of design documents discussed in *Conopco* and *Enger-Kress*. It will <u>not</u>, however, produce damages related documents for a time frame in which damages are not legally recoverable.

**C.      Proposed Compromise**

Neither party has proposed a compromise on the issue of discoverability of documents and information related to Seoul's sales and marketing prior to the issuance of the patents-in-suit.

**V.      Discoverability by Seoul of  Nichia's Analysis of How the Accused Product(s) Infringe the Patents-in-Suit**

Seoul requests that Nichia produce its "infringement contentions and analyses." Nichia refuses to produce some of the requested information on the grounds of attorney client privilege and/or attorney work product. The parties' substantive positions and proposed compromise positions are set forth below.

**A.      Seoul's Position**

Nichia is required to complete a pre-filing analysis of how any product it accuses infringes the patents-in-suit. Because the patents involved are design, not utility, patents, Nichia also must identify the features of the invention which it claims are ornamental and deserve patent protection. Nichia has, during the course of drafting this joint letter, agreed to produce documents and answer

*Nichia Corp. v. Seoul Semiconductor, Co., et al.,*
Case No. 3:06-CV-0162-MMC (JCS) (N.D. Cal.)

United States Magistrate Judge Joseph C. Spero
November 13, 2006
Page 24

interrogatories responsive to what features of the patents-in-suit are ornamental and how the accused product infringes those ornamental features.  Nichia refuses, however, to provide its pre-infringement analysis on the ground it is protected by the attorney-client privilege and work product doctrine.  That argument is specious.

Rule 11 of the Federal Rules of Civil Procedure "imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact [and] legally tenable."  *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405 (1990);  Fed. R. Civ. Pro. 11.  In patent cases, the Federal Circuit has interpreted the "reasonable inquiry" prong of Rule 11 to require that counsel for the party alleging infringement conduct a detailed analysis of the claims of the patents-in-suit and compare those claims with the accused devices.  *View Engineering, Inc. v. Robotic Vision Sys., Inc.,* 208 F.3d at 986 (Fed. Cir. 2000).  The Federal Circuit has also held that when challenged, the party claiming infringement must tell the alleged infringer how its accused products infringe the patents-in-suit.  Indeed, the party alleging infringement must *demonstrate* to the alleged infringer why it believes it has a reasonable chance of proving infringement.  *View Engineering,* 208 F.3d at 986.  Failure to do so should "result in the district court's imposition of sanctions unless the plaintiff has a sound excuse or considerable mitigating circumstances."  *Classen Immunotherapies Inc. v. Biogen Idec*, 381 F. Supp. 2d 452, 457 (D. Md. 2005).

Nichia's claim that certain responsive documents, such as the attorney-drafted infringement analyses, enjoy attorney work product immunity is wrong.  First, the Federal Rules and Federal Circuit impose a demonstration requirement on a patentee with respect to the infringement analysis in a manner that clearly is not considered privileged or work product protected.  *See View Engineering, Inc.,* 208 F.3d at 986.  Second, if Nichia and Nichia counsel did analyze whether the accused product infringes the patents-in-suit, the analysis was *not* done with the expectation that it would be privileged.  To prevail, Nichia must prove its infringement theory to a jury.  Seoul is entitled to know that theory in advance.  Finally, even if there is an attorney-written document that a court determines is privileged or subject to work product immunity, the infringement theory itself is not privileged.  Nor are the documents Nichia analyzed to arrive at its infringement conclusions or any discussions, notes or analyses that belong to Nichia employees or other non-attorneys.  These documents should be among those that Nichia has now agreed to produce.

For the reasons stated above, Nichia's pre-filing analysis should be produced.  For the sake of resolution, Seoul is willing to table its claim for now if Nichia provides a robust response to the outstanding discovery and proves that it completed the required analysis before filing suit.  Seoul reserves the right to challenge Nichia for these allegedly work-product protected documents if the need should later arise.

### B.    Nichia's Position

Nichia has already agreed to produce non-privileged documents, if any exist, responsive to every request for production (RFP) identified by Seoul related to Nichia's infringement analysis upon entry of a mutually acceptable protective order.  Nichia has also already agreed to answer the interrogatories identified by Seoul related to Nichia's infringement analysis upon entry of a mutually acceptable protective order.

*Nichia Corp. v. Seoul Semiconductor, Co., et al.,*
Case No. 3:06-CV-0162-MMC (JCS) (N.D. Cal.)

United States Magistrate Judge Joseph C. Spero
November 13, 2006
Page 25

Although Nichia has agreed to respond to every interrogatory identified by Seoul and produce non-privileged documents responsive to the requests for production identified by Seoul, this does not satisfy Seoul. Seoul persists in demanding Nichia's "pre-infringement analysis" and dismisses claims of privilege as "specious" even before seeing a privilege log. Seoul also makes the grave suggestion that Nichia has violated Federal Civil Procedure Rule 11. However, Seoul has not cited any authority to suggest that it is entitled to more than Nichia has already agreed to provide. Indeed, the authority relied on by Seoul makes clear that Seoul's arguments are devoid of merit.

Seoul cites *View Engineering, Inc. v. Robotic Vision Sys., Inc.,* 208 F.3d 891, 986 (Fed. Cir. 2000) for the proposition that "when challenged, the party claiming infringement must tell the alleged infringer how its accused products infringe the patents-in-suit." Nichia has already agreed to "tell the alleged infringer[, Seoul,] how its accused products infringe the patents-in-suit" by agreeing to respond to interrogatories and produce documents upon entry of a protective order. In addition, as discussed above, Nichia confirms that it did conduct a pre-filing investigation on the 902 and 903 series LED, and if necessary, Nichia will prove it conducted an investigation, such as by *in camera* review. In addition, Nichia states that it conducted an infringement analysis of the 1002 and 1003 series LED before alleging infringement of these products. Thus, Nichia has satisfied Rule 11 and can prove its compliance, if necessary.

Nothing in *View Engineering*, or in any other case of which Nichia is aware, suggests that privilege evaporates upon the accused infringer demanding a showing of how the asserted patents are infringed. Indeed, the Advisory Committee Notes to the 1993 amendments to Rule 11 make clear that Rule 11 motions "should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings." The Advisory Committee Notes to the 1993 amendments go on to state that "[n]or should Rule 11 motions be prepared to … seek disclosure of matters otherwise protected by the attorney-client privilege or the work product doctrine." Despite these very clear admonitions, Seoul attempts to do exactly what is proscribed – use Rule 11 as a discovery device to seek disclosure of matters otherwise privileged.

Finally, Seoul states that responsive documents do not enjoy work product immunity, because applicable law requires their production and analyses were "*not* done with the expectation that it would be privileged." However, it is hard to imagine a document more squarely within the confines of attorney-client privilege and/or attorney work product than a document setting forth a pre-filing infringement investigation performed at the request of a client. Seoul has cited no authority supporting its claims that privilege does not apply nor is Nichia aware of any such authority. Moreover, the argument that privilege does not apply to a document that contains analysis that may be presented to a jury is pure sophistry. Such a requirement would eviscerate attorney-client privilege and the doctrine of attorney work product. Indeed, attorney work product would be practically non-existent if otherwise privileged documents became discoverable upon the possibility that their substance may be presented to a jury.

In addition, Seoul contends that even if privilege does apply to some documents, "the infringement theory itself is not privileged." Nichia agrees that the infringement theory itself is not privileged, which is why it has agreed to respond to the interrogatories identified by Seoul. Nichia cannot agree, however, to turn over documents protected by attorney-client privilege and/or work product.

25

United States Magistrate Judge Joseph C. Spero
November 13, 2006
Page 26

In sum, Nichia has agreed to respond to every interrogatory identified by Seoul and produce non-privileged documents responsive to the requests for production identified by Seoul.  Seoul is not entitled, however, to receive privileged documents.  Seoul's arguments to the contrary, including its baseless suggestions of Rule 11 violations, do not change this fact.

    **C.**    **Proposed Compromise**

Neither party has proposed a compromise on the issue of discoverability of documents and information related to Nichia's infringement analysis.

**VI.**    **Conclusion**

Because these four discovery issues remain in dispute, the parties respectfully request resolution from the Court for the reasons set forth above.

Respectfully,

DATED:  November 13, 2006    By:      /s/ Kenneth E. Krosin
        KENNETH E. KROSIN
        Foley & Lardner LLP
        Attorneys for Plaintiff Nichia Corporation

DATED:  November 13, 2006    By:      /s/ Beth H. Parker
        BETH H. PARKER
        Bingham McCutchen LLP
        Attorneys for Defendants Seoul
        Semiconductor Co., Ltd. and Seoul
        Semiconductor, Inc.

*Nichia Corp. v. Seoul Semiconductor, Co., et al.*,
Case No. 3:06-CV-0162-MMC (JCS) (N.D. Cal.)