1   BINGHAM McCUTCHEN LLP
    BETH H. PARKER (SBN 104773)
2   beth.parker@bingham.com
    MONTY AGARWAL (SBN 191568)
3   monty.agarwal@bingham.com
    JUDITH S. H. HOM (SBN 203482)
4   judith.hom@bingham.com
    CHI SOO KIM (SBN 232346)
5   chisoo.kim@bingham.com
    Three Embarcadero Center
6   San Francisco, California 94111-4067
    Telephone: (415) 393-2000
7   Facsimile: (415) 393-2286

8   Attorneys for Defendants
    Seoul Semiconductor Co., Ltd. and
9   Seoul Semiconductor, Inc.

10

              UNITED STATES DISTRICT COURT
11
              NORTHERN DISTRICT OF CALIFORNIA
12
              SAN FRANCISCO DIVISION
13

14
  Nichia Corporation,                No. 3:06-CV-0162 (MMC)
15
         Plaintiff,             **DEFENDANTS SEOUL**
16                     **SEMICONDUCTOR CO., LTD. AND**
        v.                   **SEOUL SEMICONDUCTOR, INC.'S**
17                     **MOTION FOR CLAIM**
  Seoul Semiconductor Co., Ltd., Seoul     **CONSTRUCTION AND FOR**
18   Semiconductor, Inc.,           **SUMMARY JUDGMENT**
19          Defendants.

                    Date:      July 27, 2007
20                     Time:     9:00 a.m.
                    Place:    Courtroom 7, 19th Floor
21                     Judge:    Hon. Maxine M. Chesney

22

23                   **REDACTED VERSION**
24          **ORIGINAL SUBMITTED UNDER SEAL**

25

26

ACTIVE/72054939.1                          No. 3:06-CV-0162 (MMC)

TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION FOR CLAIM CONSTRUCTION AND SUMMARY JUDGMENT ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................ 1

I.      Introduction .................................................................................................. 1

II.     Statement of issues to be decided ............................................................... 4

III.    statement of facts ........................................................................................ 4

        A.      The Parties ...................................................................................... 4

        B.      Nichia's Design Patents ................................................................ 4

        C.      Nichia's Allegations ...................................................................... 6

        D.      Side View Light Emitting Diodes ................................................ 6

        E.      The Seven Mobile Phones ............................................................. 8

        F.      From the LED to the Mobile Phone:  The Manufacturing Chain ............. 8

        G.      No Sales of 902 Products By Seoul's Direct Customers To U.S. ............. 9

        H.      Seoul's Lack of Specific Intent and Lack of Affirmative Acts ................ 10

        I.      Purchasers of LEDs:  Functional Considerations v. Ornamentality ........ 11

                1.      Functionality Drove Nichia's Development of 335 LED ............. 11

                2.      Ordinary Observers Care Only About Functionality ................... 12

                        a.      Jeong Ju Kim, Namotek ........................................ 12

                        b.      Bang Gun Kim, Hyundai LCD .............................. 13

                        c.      Dong-Hwan Lee, Samsung SDI ............................ 13

                        d.      Irrelevant Observers ............................................. 14

                        e.      Nichia's Own Admission ...................................... 14

IV.     ARGUMENT ............................................................................................. 14

        A.      Summary Judgment Standards .................................................... 14

        B.      Nichia's Patents Are Invalid Because The LEDs Are Hidden In Use ............ 15

        C.      Summary Judgment Should be Granted For Seoul On Nichia's Active Inducement Claim .......... 18

                1.      No Sales of 902 Series By Seoul's Direct Customers To U.S., So No Direct Infringement ............. 18

                2.      No Specific Intent To Knowingly Induce Infringement ............. 19

                3.      No Affirmative Acts .............................................................. 22

                4.      No Actual Knowledge of Nichia's Design Patents .................... 22

DEFENDANTS SEOUL SEMICONDUCTOR CO. LTD. AND SEOUL SEMICONDUCTOR, INC.'S
MOTION FOR CLAIM CONSTRUCTION AND FOR SUMMARY JUDGMENT

TABLE OF CONTENTS
(continued)

Page

D.   Claim Construction ................................................................ 23

1.   The '538 Claims Only Opaque Windows ..................................... 23

2.   The Patents In Suit Claim Electrodes With Rounded Corners ........................................................................ 24

3.   Functional, Not Ornamental, Features ......................................... 25

a.   The Window Is Functional. ............................................. 25

b.   The Body Is Functional ................................................... 26

c.   The Tapered Indentation Is Functional. ........................... 26

d.   The Injection Mold Gate Is Functional ........................... 26

e.   The Rectangular Impressions On The Body Are Functional .............................................................. 27

f.   The Witness Line is Functional. ...................................... 27

g.   The Cathode Mark Is Functional. ................................... 27

h.   The Electrodes Are Functional. ...................................... 27

E.   Seoul Does Not Infringe Nichia's Patents ................................ 29

1.   Test One: Gorham "Ordinary Observer" Test ............................ 29

2.   Test Two: Point of Novelty ......................................................... 29

3.   No Dispute: Nichia Fails Both Tests ........................................... 30

V.   Conclusion .......................................................................................... 32

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

ACTIVE/72054939.1                                     ii                          No. 3:06-CV-0162 (MMC)

DEFENDANTS SEOUL SEMICONDUCTOR CO. LTD. AND SEOUL SEMICONDUCTOR, INC.'S
MOTION FOR CLAIM CONSTRUCTION AND FOR SUMMARY JUDGMENT

TABLE OF AUTHORITIES

Page

Cases

*A&H Mfg. Co. v. Contempo Card Co.*, 576 F. Supp. 894 (D.R.I. 1983) ..................................... 17

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................. 15

*C & M Fiberglass Septic Tanks, Inc. v. T & N Fiberglass Mfg. Co.*, 214 U.S.P.Q.
 159 (D.S.C. 1981) ..................................................................................................................... 17

*Celerity, Inc. v. Ultra Clean Technology Systems and Service, Inc.*, 2007 WL
 1202240 (N.D. Cal. 2007)......................................................................................................... 15

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................ 15

*Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370 (Fed. Cir. 2002)........................... 29

*Crystal Semiconductor Corp. v. Tri Tech Microelects. Int'l, Inc.,* 246 F.3d 1336
 (Fed. Cir. 2001) ......................................................................................................................... 18

*Cybiotronics, Ltd. v. Golden Source Electronics Ltd.*, 130 F. Supp. 2d 1152 (C.D.
 Cal. 2001)............................................................................................................................ 18, 22

*Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308 (Fed. Cir. 2001) .................................... 23

*DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293 (Fed. Cir. 2006) .................................. 18, 19, 20, 22

*Electronic Molding Corp. v. MUPAC Corp.*, 529 F. Supp. 300 (D.C. Mass. 1981) ............. 16, 17

*Elmer v. ICC Fabricating, Inc.*, 67 F. 3d 1571 (Fed. Cir. 1995) ........................................... 23, 30

*Etter v. Watson*, 147 F. Supp. 511 (D.D.C. 1957) ....................................................................... 17

*Faroudja Labs., Inc. v. Dwin Elecs., Inc.*, 1999 WL 111788 (N.D. Cal. 1999) ......................... 19

*Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.,* 162 F. 3d 113 (Fed.
 Cir. 1998) .................................................................................................................................. 29

*Gorham Mfg. Co. v. White*, 81 U.S. 511 (1872) .......................................................................... 29

*Hewlett-Packard Co. v. Bausch & Lomb*, 909 F.2d 1464 (Fed. Cir. 1990)................................. 19

*Hughes Aircraft Co. v. National Semiconductor Corp.*, 857 F. Supp. 691 (N.D.
 Cal. 1994)............................................................................................................................ 18, 22

*In re Albert A. Carletti and Welsh C. Whittlesey*, 328 F.2d 1020 (C.C.P.A. 1963)............... 14, 16

TABLE OF AUTHORITIES
(continued)

Page

*In re Cornwall*, 230 F.2d 457 (CCPA 1956)..........................................................................15, 16

*In re Mann*, 861 F.2d 1581, 8 USPQ2d 2030 (Fed.Cir.1988) ......................................................23

*In re Stevens*, 173 F.2d 1015 (C.C.P.A. 1949)......................................................................15, 17

*In re Webb*, 916 F.2d 1553 (Fed. Cir. 1990) ...............................................................................15

*Informatica Corp. v. Business Objects Data Integration, Inc.*, 2006 WL 2917580
    (N.D. Cal. 2006).......................................................................................................................19

*Iridex Corp. v. Synergetics USA, Inc.*, 474 F. Supp. 2d 1105 (E.D. Mo. 2007) ........................18

*Jervis B. Webb Co. v. Southern Sys., Inc.*, 495 F. Supp. 145 (E.D. Mich. 1980) ......................18

*Keystone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444 (Fed. Cir.
    1993) ...:.....................................................................................................................................23

*Lawman Armor Corp. v. Winner Intern., LLC*, 437 F.3d 1383 (Fed. Cir. 2006)........................30

*Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186 (Fed. Cir. 1988) .............................................23, 29

*Mangosoft, Inc. v. Oracle Corp.*, 421 F. Supp. 2d 392 (D. N.H. 2006).....................................19

*Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544 (Fed. Cir. 1990)...........................20

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc),
    *aff'd*, 517 U.S. 370 (1996) ...................................................................................................23, 32

*Microsoft Corp. v. AT&T Corp.*, 127 S.Ct. 1746 (2007) ..............................................................2

*Mid-America Bldg. Prod. Corp. v. Richwood Bldg. Prod., Inc.*, 978 F. Supp. 708
    (E.D. Mich. 1996) ...............................................................................................................18, 22

*Norco Products, Inc. v. Mecca Dev., Inc.*, 617 F. Supp. 1079 (D.Conn. 1985)..........................17

*OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396 (Fed. Cir. 1997)..............................23, 29

*R2 Medical Systems, Inc. v. Katecho, Inc.*, 931 F. Supp. 1397 (N.D. Ill. 1996)........................22

*Sharper Image Corp. v. Target Corp.*, 425 F. Supp.2d 1056 (N.D. Cal. 2006) .........................19

*Static Control Components v. Lexmark Int'l, Inc.*, 2007 U.S. Dist. LEXIS 31445
    (E.D. Ky. 2007)...................................................................................................................15, 17

*Tegal Corp. v. Tokyo Electron Co., Ltd.*, 248 F.3d 1376 (Fed. Cir. 2001) ............................18, 22

ACTIVE/72054939.1                            iv                            No. 3:06-CV-0162 (MMC)

DEFENDANTS SEOUL SEMICONDUCTOR CO. LTD. AND SEOUL SEMICONDUCTOR, INC.'S
MOTION FOR CLAIM CONSTRUCTION AND FOR SUMMARY JUDGMENT

TABLE OF AUTHORITIES
(continued)

Page

*Unidynamics Corp. v. Automatic Prods. Int'l.*, 157 F.3d 1311 (Fed. Cir. 1998) ........................ 29

*Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348 (Fed. Cir. 2003) ...................................... 20

Statutes

35 U.S.C. § 171 ............................................................................................................. 15, 17

35 U.S.C. § 271(b) ............................................................................................................. 18

Rules

Fed. R. Civ. P. 56(e) ............................................................................................................. 15

L. R. 56-1 ............................................................................................................. 1

L. R. 7-2 ............................................................................................................. 1

DEFENDANTS SEOUL SEMICONDUCTOR CO. LTD. AND SEOUL SEMICONDUCTOR, INC.'S
MOTION FOR CLAIM CONSTRUCTION AND FOR SUMMARY JUDGMENT

1

## TABLE OF FIGURES

2                                                                                      Page

3    **Figure 1:**    Photomicrograph of U.S. penny with Nichia's 335 series LED with a grain
4                     of Japanese rice ............................................................................................ 3

     **Figure 2.**    Nichia's Design Patents ................................................................................. 5
5
     **Figure 3.**    Features of Nichia's Design Patents ............................................................. 5
6
     **Figure 4.**    Back Light Unit Structure ............................................................................. 7
7
     **Figure 5.**    Rounded Electrodes from the '388 Patent and '385 Patent ............................... 24
8
     **Figure 6.**    ............................................................................................................... 31
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS SEOUL SEMICONDUCTOR CO. LTD. AND SEOUL SEMICONDUCTOR, INC.'S
MOTION FOR CLAIM CONSTRUCTION AND FOR SUMMARY JUDGMENT

1      <u>**NOTICE OF MOTION AND MOTION FOR CLAIM CONSTRUCTION AND**</u>
2                                      <u>**SUMMARY JUDGMENT**</u>

3              Pursuant to Federal Rule of Civil Procedure and Civil Local Rules 56-1 and 7-2,

4  Defendants Seoul Semiconductor Co., Ltd. ("SSC") and Seoul Semiconductor, Inc. (collectively

5  "Seoul") move the Court to construe the claims of the design patents at issue and for summary

6  judgment. The motion is to be heard before the Court on July 27, 2007, at 9:00 a.m.

7              Seoul respectfully requests that the Court construe the claims of the design patents

8  at issue pursuant to *Markman*, and grant summary judgment in favor of Seoul on its invalidity

9  defense, and on Plaintiff Nichia Corporation's ("Nichia") claims of induced infringement and on

10  infringement. Accordingly, Seoul respectfully requests that the Court dismiss Plaintiff Nichia

11  Corporation's action with prejudice.

12                     <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

13  **I.**      **INTRODUCTION**

14              This action is exactly the type of case the Supreme Court and Federal Circuit have

15  strived to prevent. All the major players in the distribution chain including the plaintiff, Nichia,

16  a Japanese company, and defendant, SSC, a Korean company, are outside the United States. The

17  challenged conduct occurs almost exclusively outside of the United States. The design,

18  development, manufacturing, sales, and distribution of Seoul's 902 series light emitting diode

19  ("LED"), the only product at issue, takes place predominantly in Korea. Nichia has no

20  counterpart design patents there; the Korean Industrial Property Tribunal recently invalidated

21  Nichia's counterpart Korean design registrations.[1]

22              As the Supreme Court recently warned, if Nichia wants to prevent infringement

23  "in foreign countries, its remedy today lies in obtaining and enforcing foreign patents."

24

25  [1]     *See* Ex. B (Nichia's Responses to Seoul's Second Set of RFAs).

26

DEFENDANTS SEOUL SEMICONDUCTOR CO. LTD. AND SEOUL SEMICONDUCTOR, INC.'S
MOTION FOR CLAIM CONSTRUCTION AND FOR SUMMARY JUDGMENT

1   *Microsoft Corp. v. AT&T Corp.*, 127 S.Ct. 1746, 1759 (2007).  "The general rule under United

2   States patent law is that no infringement occurs when a patented product is made and sold in

3   another country."  *Id.* at 1750.  This is particularly so where, as here, SSC, which a design

4   registration for its products in Korea and is legally entitled to sell its 902 LED products in Korea.

5          Since it first fired off its warning letter in March 2005, Nichia has used U.S.

6   patent litigation to thwart lawful competition.  Indeed, in this case, Nichia's own expert has

7   calculated direct infringement damages at a *de minimis* ████████ of which is attributable to a

8   sale that Nichia's lawyers clandestinely engineered to create jurisdiction to bring this suit.

9   Rather than acknowledging this, Nichia has continued this case on an induced infringement

10  theory that cannot stand, legally or factually.

11         Like Nichia's 335 LEDs, which it claims embody the patented designs, Seoul's

12  902 LEDs are one of seven components of a back light unit, and is hidden—not visible—in an

13  assembled unit.  The back light unit in turn is one of approximately twenty embedded

14  components of a liquid crystal display module.  These component parts are made and sold in

15  Asia, and their manufacturers are not found in the United States.  Ultimately, these components

16  are put into electronic end-products in Asia such as MP3 players, cellular phones, and personal

17  digital assistants.  In today's global economy, consumer electronics companies sell these

18  electronic products around the world through a complex manufacturing and distribution chain.

19         Seoul does not make, sell, offer to sell, use or import into the U.S. any of these

20  electronic products and has no control over how or where they are distributed.  Although there is

21  no evidence that Seoul sold its 902 series to an entity that then directly sold a product containing

22  the 902 into the United States, some unknown quantity of the cell phones, for example, that

23  contain the components that use Seoul's 902 LEDs may end up in the United States.  If they do,

24  Seoul does not have control over it, and does not specifically intend or encourage it.  As a result,

25  Nichia has no evidence, because there is none, that Seoul ever induced infringement of Nichia's

26  design patents.  This Court can grant summary judgment on Nichia's induced infringement

1   claim.

2          The Court should also find the design patents in suit invalid on summary

3   judgment because they are hidden in and, on independent ground for invalidating a design patent.

4   Nichia's 335 LEDs that embody its patents are less than half the size of a grain of rice, as

5   depicted in Figure 1 below.



**Figure 1:** Photomicrograph of U.S. penny with Nichia's 335
series LED located above the year 2000 stamped on the penny with
a grain of Japanese rice above the word "LIBERTY."

18  The LED itself is difficult to view, and the features of the LED are virtually impossible to

19  observe with the naked eye.[2] The engineers who select LEDs are simply not concerned with

20  ornamentality, if any exists. To the contrary, the purchasers care about functional attributes such

21  as brightness, thickness, and reliability. For these reasons, the LEDs are hidden in use, and

22  Nichia's patents that embody them are invalid.

23  ─────────────────

24  [2]     Declaration of Chi Soo Kim, Ex. K, Tr. 26:6-14 (Jeong Ju Kim); Ex. M, Tr. 37:11-13
    (Kis.); Ex. R, Tr. 115:2-5 (Sch.); Ex. U, Tr. 108:5-24 (Woo.) ███████████████████

25  ███████████████████████. For the Court's reference, a list of all the deponents cited
    by Seoul is attached as Exhibit A to the Kim Declaration.

26

## II.   STATEMENT OF ISSUES TO BE DECIDED

This motion presents four issues.

**Invalidity- Hidden in Use:**  Whether Nichia's patents are invalid because the LEDs they pertain to are hidden in use, are so tiny as to render their features indistinguishable to the naked eye, and whose ornamentality, if any, is not a matter of concern to ordinary purchasers.

**No Active Inducement of Infringement**:  Whether Nichia has carried its burden to withstand summary judgment to establish that SSC actively and knowingly induced a third party to directly infringe Nichia's design patents in the United States, after SSC had actual knowledge of the patents, and with the specific intent to induce the third party's acts of direct infringement.

**Claims Construction**:  Pursuant to *Markman v. Westview*, Seoul requests that the Court construe Nichia's patents by (a) interpreting certain aspects of the claimed drawings, and (b) separating the functional from ornamental features.

**Non-Infringement**:  Whether Nichia has carried its burden to withstand summary judgment to establish that Seoul's 902 series LEDs infringe its design patents.

## III.   STATEMENT OF FACTS

### A.   The Parties

**Seoul Semiconductor**:  Defendant SSC, located in Seoul, South Korea, makes LED products, including the 902 series, the accused product at issue.  Seoul Semiconductor, Inc. ("SSI") is an affiliated U.S. company, which sells some, but not all, of SSC's products in the United States.  SSI does not, however, sell the 902 series.  Ex. H, Tr. 184:10-185:1 (Jun).

**Nichia Corporation**:  Plaintiff Nichia, located in Japan, is a direct competitor and "one of the largest LED manufacturers in the world."  Complaint ¶ 10 (Docket No. 1).

### B.   Nichia's Design Patents

**Patents At Issue:**  Nichia holds four U.S. design patents for "an ornamental design for a light emitting diode":  Patent Nos. D491,538 ("the '538 patent"), D490,784 ("the

1   '784 patent"), D503,388 ("the '388 patent"), and D499,385 ("the '385 patent").  Ex. Y, (Dep.

2   Exs. 11, 13, 17, 18).  The patents claim various combinations of a side view LED.

3            Figure 2 below shows the principal drawings of each patent.

4   **Figure 2.  Nichia's Design Patents**



Nichia '538

Nichia '784

Nichia '388

Nichia '385

12            Generally speaking the claimed designs have eight features:

13   a)      An elongated **window** on the front surface.

    b)      The **body**.

14   c)      A large, central tapered **indentation** on the rear surface.

15   d)      A circular **mold gate** on the rear surface.

    e)      **Rectangular impressions** on the rear surface.

16   f)      A witness (parting) line.

    g)      A **cathode mark**.

17   h)      An **electrode** at each end.

18            Figure 3 below, using the '538 design, illustrates these features.

19   **Figure 3.  Features of Nichia's Design Patents**



(c) Indentation    (f) Witness Line

(b) Body

(e) Rectangular Impressions

(g) Cathode Mark    (a) Window

(h) Electrodes    (d) Mold Gate

1         Seven features, (a) through (g), are collectively referred to as the package, or

2   body. ███████████████████████████████████████████████████████████

3   ███████████████████████████. Ex. U, Tr. 84:4-15, 84:23-85:6, 87:11-88:3, 89:2-19,

4   90:7-11, 115:13-116:8, 205:1-5 (Woo.); Ex. R, Tr. 27:6-15, 29:10-17, 136:2-7, 136:6-17 (Sch.).

5   As a result, the only points of novelty in Nichia's claimed designs are the electrodes. *See* (h) in

6   Fig. 3 above.

7       **C.**   **Nichia's Allegations**

8         Nichia alleges that Seoul "has made, used, imported, sold and/or offered for sale

9   products that infringe" Nichia's patents.  Complaint ¶¶ 25, 30, 35, 40.  Nichia also alleges that

10  SSC has "induced others… to infringe [Nichia's patent] by encouraging and promoting the use,

11  manufacture, importation, sale and/or offer for sale by others of products that infringe" Nichia's

12  patent.  Complaint ¶¶ 26, 31, 36, 41.  Only one Seoul product, the 902 series side-view LED, is

13  accused.  Complaint; *passim*; *see* Order (12/11/2006) (Docket No. 156).

14      **D.**   **Side View Light Emitting Diodes**

15        Like most LEDs, Seoul's 902 series are semiconductor chips mounted on a metal

16  lead frame that is surrounded by an injection molded package, or body.  The electrodes are the

17  part of the lead frame that protrude from the molded body.

18        The LEDs are soldered onto a BLU frame, which is assembled with a liquid

19  crystal display ("LCD") to make a liquid crystal module ("LCM").  When electrical current

20  passes from the electrode to the LED chip, the LED emits light from its window.  In the case of

21  side view LEDs, like those at issue here, the light emitting window is on the side.

22        As depicted below in Figures 4 and 4a below, the side view LED is one of seven

23  hidden components of the BLU, which in turn is one of approximately twenty embedded

24  components of a LCD module or LCM.  Ex. K, Tr. 25:15-26:1 (J.J. Kim); Ex. I, Tr. 26:21-27:4,

25  81:19-84:23 (B.G. Kim); Ex. AA, (Dep. Ex. 601).  Once the BLU is incorporated into an LCD

26  module, the LED remains hidden; the LEDs are covered with black tape in the process.  Ex. I,

1    Tr. 84:3-23 (B.G. Kim); Ex. K, Tr. 22:9-23 (J.J. Kim).  The LCD module, in turn, is integrated

2    into electronic end-products like cell phones and MP3 players.  Ex. AA (Dep. Ex. 601).

3    Additionally, once soldered to a BLU, the LED cannot be viewed without destroying the BLU.

4    Ex. K, Tr. 23:11-18 (J.J. Kim).  The LCD modules are then placed inside small electronics

5    devices, primarily cell phones.  Ex. M, Tr. 56:10-21 (Kis. Vol. 1b).  The LEDs are never

6    intended to be seen in their normal use.  Ex. I, Tr. 19:4-10; 84:13-23 (B.G. Kim).

7                           **Figure 4.  Back Light Unit Structure**



13                          **Figure 4a.  Sample BLU**



21           **Fig. 4a**.  A sample BLU in relation to a U.S. quarter.
22           The side view LED is not visible.

23           Seoul's 902 LEDs are tiny, only 7mm thick and about 4mm long.  *See* n.2;

24    Ex. BB (Dep. Ex. 75).  ████████████████████████

25    ██████████████████████████████████████.  *See* Ex. W (Dep. Ex. 277 ¶ 8).

26

DEFENDANTS SEOUL SEMICONDUCTOR CO. LTD. AND SEOUL SEMICONDUCTOR, INC.'S
MOTION FOR CLAIM CONSTRUCTION AND FOR SUMMARY JUDGMENT

**E.    The Seven Mobile Phones**

Schubert's opinion is also the foundation of Nichia's induced infringement claim. *See* Ex. R, Tr. 55:21-58:3 (Sch.).



*See* Ex. R, Tr. 69:5-21 (Sch.).

**F.    From the LED to the Mobile Phone:  The Manufacturing Chain**

Nichia has presented no evidence, and there is none, that Seoul either imported or sold those phones in the United States.  Moreover, Schubert did not explain who brought the seven phones to the U.S., or when, or what parts of the phones were made where, when, by whom, and said only that they contained Seoul's 902 series LEDs.

in general the chain of distribution of any product proceeds from SSC in Korea, to foreign BLU manufacturers, also in Korea, to LCD/LCM manufacturers, also outside the United States, and then to various parts of the world.

**BLU Manufacturers**: Seoul principally sold its 902 LEDs to BLU makers, some of which sold BLUs containing 902 series LEDs to LCD/LCM manufacturers.  *See* Ex. E,

1    Tr. 25:23-26:7 (S.B. Han); Ex. J, Tr. 63:17-64:2 (B.K. Kim).  These BLU manufacturers are

2    located outside the United States, mainly in Korea and elsewhere in Asia, and Seoul sold its 902

3    LEDs outside the United States, mostly in Asia.  Ex. J, Tr. 205:14-16 (B.K. Kim); Ex. H, Tr.

4    171:10-14, 180:24-181:6 (Jun); Ex. K, Tr. 31:25-32:5 (J.J. Kim).

5    ████████████████████████████████████████████████████████████

6    ███████████████████████████  in Korea or anywhere else; this is undisputed.  *See* Ex.

7    L, Tr. 34:14-20 (J.W. Kim).

8    ████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████

10   ████████████.  *See* Ex. N, Tr. 26:14-17 (D. Lee).  All of the promotional

11   activity and sales occurred in Korea.  Ex. N, Tr. 27:9-19 (D. Lee) (BLU sales in Korea); Ex. E,

12   Tr. 145:10-146:13 (S.B. Han) (sales occurred in Korea).  None occurred in the U.S.  Ex. N, Tr.

13   111:5-11 (D. Lee).

14        **G.     No Sales of 902 Products By Seoul's Direct Customers To U.S.**

15             Seoul's direct customers did not sell products containing the 902 directly into the

16   United States.  Ex. K, Tr. 41:16-18, 45:25-46:2, 46:16-47:1, 52:24-53:3, 69:12-18 (J.J. Kim);

17   Ex. I, Tr. 88:4-9, 88:13-89:3 (B.G. Kim); Ex. N, Tr. 110:10-13 (D. Lee).

18             **Namotek**:  Namotek, a Korean BLU manufacturer and Seoul's largest 902

19   customer, never sold a single BLU with the 902 directly to anyone in the United States.  Ex. K,

20   Tr. 28:16-18, 41:16-18, 45:25-46:2, 46:16-47:1, 52:24-53:3, 69:12-18 (J.J. Kim); Ex. X (Dep.

21   Ex. 505).

22   ████████████████████████████████████████████████████████████

23   an LCD with a 902 to anyone in the United States. ████████████████████

24   ███████████████████████████████████████████████████████████.  Ex. N, Tr.

25   13:6-14:14, 110:7-13 (D. Lee); *see* Ex. X (Dep. Ex. 505).  But SSC did not encourage this

26   shipment, and in any case, the 902s were first sold to BLU manufacturers who sold the BLUs to



1    who only then shipped them to the U.S.  *See* Ex. N, Tr. 113:1-18, 116:10-14 (D. Lee).

6    **H.    Seoul's Lack of Specific Intent and Lack of Affirmative Acts**

7            In the sales process, Seoul sales representatives sometimes may have heard

8    "unconfirmed" information and "rumors" about the BLU companies' customer's, customer, or,

9    said differently, Seoul's customer's customer's customer, typically the end-user.  *See* Ex. J, Tr.

10   203:25-204:16, 236:12-237:22 (B.K. Kim); Ex. L, Tr. 137:7-138:2, 160:16-161:2, 219:13-220:10

11   (J.W. Kim).  Seoul, however, did not obtain such information directly, and the piecemeal

12   information it did get was often wrong.  Ex. L, Tr. 44:16-46:18, 54:13-56:6, 137:7-140:13,

13   219:13-221:6 (J.W. Kim).

14           Seoul, therefore, typically does not know in which specific model of end-

15   products, such as ████████████████, its 902 series LEDs would be used, let alone where

16   geographically those mobile phones might end up.  *See* Ex. K, Tr. 51:16-52:19 (J.J. Kim); Ex. L,

17   Tr. 137:7-140:13, 219:13-220:10 (J.W. Kim); Ex. I, Tr. 90:19-25 (B.G. Kim).

18           This is not unusual.  Jeong Ju Kim of Namotek explained that it does not tell

19   Seoul or its other LED suppliers the identity of Namotek's customers or where the end product

20   will be sold.  Ex. K, Tr. 51:16-53:3 (J.J. Kim); *id.* at 52:15-19 (Seoul "would have no idea").

21           Likewise, ████████████████████████████████████████

22   ████████████████████████████████████████████████████████

23   ████████████████████████████████.  Ex. J, Tr. 89:19-23, 90:19-

24   25 (B.G. Kim).

25           Similarly, ████████████████████████████████████████

26   ████████████████████████████████████████████████████████

1   suppliers, like Seoul.  Ex. N, Tr. 121:6-14 (D. Lee).  As to where consumer products containing

2   SDI's LCD modules are sold, Mr. Lee said,

3

4          Ex. N, Tr. 123:15-124:8 (D. Lee).

5          Even Takashi Sakamoto, Nichia's 30(b)(6) witness for marketing and sales of its

6   335 LED outside the U.S.,

7                                                                 Ex. Q, Tr. 23:8-18 (Sak. Vol. III).

8   Similarly, Akihito Kishi, Nichia's Director and Executive General Manager of Manufacturing

9   responsible for overseeing the manufacture of Nichia's LEDs

10

11                                                                 Ex. M, Tr. 57:7-19, 57:25-

12  58:3 (Kis.).

13         Without the specific information about and ability to control the destination of

14  end-products like cell phones, Seoul could not, and did not, commit affirmative acts for the

15  purpose of inducing its customers to sell products containing the 902 LED into the United States.

16  Ex. L, Tr. 223:1-15 (J.W. Kim).  Seoul's customers, such as Dong-Hwan Lee of Samsung SDI,

17  corroborated.  He explained, Seoul did not encourage SDI to sell its modules in the United

18  States.  Ex. N, Tr. 113:24-114:16, 117:10-14 (D. Lee); Ex. DD (Dep. Ex. 802).

19         I.      **Purchasers of LEDs:  Functional Considerations v. Ornamentality**

20         Nichia developed its 335 LED with functional considerations in mind, and

21  ordinary purchasers and users of Nichia's 335 LED and Seoul's 902 series LED care about that

22  functionality, not any ornamentality.

23                 1.      **Functionality Drove Nichia's Development of 335 LED**

24         Nichia began developing what would become the 335 LED in early 2001.  *See*

25  Ex. T, Tr. 34:1-5 (Tom.).  Hiroyshi Tominaga, Nichia's Deputy Division Manager who oversees

26  LED design and Nichia's 30(b)(6) witness in design and development for the 335, testified that

ACTIVE/72054939.1                    11                    No. 3:06-CV-0162 (MMC)

DEFENDANTS SEOUL SEMICONDUCTOR CO. LTD. AND SEOUL SEMICONDUCTOR, INC.'S
MOTION FOR CLAIM CONSTRUCTION AND FOR SUMMARY JUDGMENT

1   the impetus for the new design ████████████████████████████████. Ex. T, Tr. 48:24-49-5

2   (Tom.); *see also* Ex. T, Tr. 41:16-42:3 (Tom.).

3           Masahi Ishida, the named inventor, was responsible for the 335's design

4   development. *See, e.g.,* Ex. T, Tr. 36:7-13 (Tom.). He evaluated ████████████████

5   ████████████████████████████████████████████████████████████████████████

6   ████████████████████████ To meet the need, Ishida considered ████████████ Ex. F

7   (Dep. Ex. 310); Ex. G, Tr. 131:6-10 (Ish.). He settled on ██████████████████████

8   ████████████████████████████████████████████████████████████████████████████

9       *See* Ex. EE (Dep. Ex. 260); Ex. FF (Dep. Ex. 259).

10          Even Nichia's tests that purportedly examined "appearance" were directed at

11  functional, considerations, such as ██████████████████████████████████████████

12  ████████████████████████ *See, e.g.,* Ex. GG (Dep. Ex. 270). As Nichia's testimony

13  and documents attest, ██████████████████████████████████████████████████████

14  ████████████████ *See, e.g.,* Ex. GG (Dep. Ex. 270); Ex. II (Dep. Ex. 311); Ex. T, Tr. 154:4-7

15  (Tom.). Indeed, Ishida did not identify ██████████████████████████████████████

16  ████████████████████████████████ Ex. G, Tr. 181:25-185:14 (Ish.) (referring to

17  Dep. Ex. 270).

18          **2.      Ordinary Observers Care Only About Functionality**

19              **a.      Jeong Ju Kim, Namotek**

20          Jeong Ju Kim, Namotek's director of sales, production, manufacturing,

21  development, and component technology, for the past three years has decided which LEDs to

22  incorporate into Namotek's BLUs. Ex. K, Tr. 26:21-27:5 (J.J. Kim). He testified that Namotek

23  and others in the industry decide which side view LED to purchase based on functional, not

24  aesthetic, considerations: aesthetic appearance "is definitely not…a factor that I would

25  consider." *See* Ex. K, Tr. 39:23-40:1, 45:13-24, 50:1-24 (J.J. Kim). He also noted that photos of

26  LEDs never influence his decision on which LED to purchase and that the industry does not