BINGHAM McCUTCHEN LLP
BETH H. PARKER (SBN 104773)
beth.parker@bingham.com
WILLIAM F. ABRAMS (SBN 88805)
william.abrams@bingham.com
MONTY AGARWAL (SBN 191568)
monty.agarwal@bingham.com
KEVIN M. BOVARD (SBN 247521)
kevin.bovard@bingham.com
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: 415.393.2000
Facsimile: 415.393.2286

Attorneys for Defendants
Seoul Semiconductor Co., Ltd. and
Seoul Semiconductor, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| Nichia Corporation, | No. 3:06-CV-0162 (MMC) |
|---|---|
| Plaintiff, | **SEOUL SEMICONDUCTOR'S OPPOSITION TO NICHIA'S MOTION FOR PERMANENT INJUNCTION** |
| v. | |
| Seoul Semiconductor Co., Ltd. and Seoul Semiconductor, Inc., | |
| Defendants. | Date:       January 18, 2008<br>Time:      9:00 a.m.<br>Place:     Courtroom 7, 19th Floor<br>Judge:   Hon. Maxine M. Chesney |

A/72348113.4/3004554-0000319036

## I.  INTRODUCTION

Despite having lost its induced infringement claim on summary judgment, Nichia again attempts to expand the scope of this litigation to include worldwide sales of the Seoul 902. Similarly, despite having abandoned its price erosion theory, Nichia resurrects that theory to buttress its request for injunctive relief.  And, once again, Nichia seeks relief to which it is not entitled for the sole purpose of using it as a sword in its press war against Seoul.[1]

This effort should be rejected.  Nichia has shown only one *de minimis* sale -- and only of sample LEDs -- to a legitimate buyer in the United States.  There, Seoul sold just 300 samples to General Dynamics Land Systems ("GDLS") for $165.  *See* Bovard Decl. In Support of Seoul's Opposition to Nichia's Mot. for Permanent Injunction, Ex. I, Trial Ex. 122.  Even including Nichia's fabricated, sham sale of LEDs to its partner NanoScience Exchange, the total of U.S. sales amount to a miniscule 0.00004% of Seoul's worldwide 902 unit sales and only 0.0002% in terms of revenue.  Plainly, as its trial witnesses testified, Seoul does not target the 902 LED to the United States; there is simply no market for Side View LEDs here.  *See* Bovard Decl., Ex. F, Trial Tr. 884:14-23 (Jun); B. Kim Decl. In Support of Seoul's Opposition to Nichia's Mot. for Permanent Injunction at ¶¶ 4-5.

Despite Nichia's protestations to the contrary, these miniscule U.S. sales are the only ones relevant to the question of whether Nichia should be granted a permanent injunction.  It is an improper extension of United States patent laws for Nichia to allege worldwide harm as grounds for an injunction in the United States.  As the Supreme Court recently reaffirmed, United States patent laws do not extend to alleged acts of "direct infringement" outside the United States.  *See Microsoft Corp. v. AT&T Corp.*, 127 S. Ct. 1746, 1750 (2007) ("It is the

---

[1] For example, a Nichia spokesperson stated in *LEDs Magazine* that, "If granted, the injunction will ban the sale of 902 LEDs and **any other Seoul products** that infringe Nichia's patents." Bovard Decl., Ex. A.  Nichia's statements to the press are deceptive on two counts.  First, this litigation does not reach LEDs other than the 902.  *See* Order Re Motion To Compel, Dkt. No. 156 at 2.  Second, as this Court already found, Seoul's sales of products outside the United States do not violate the U.S. patent laws and are beyond the scope of the claims in this case.  *See* Order Granting In Part; Denying In Part Summary Judgment Motions, Dkt. No. 665.

general rule under United States patent law that no infringement occurs when a patented product is made and sold in another country.").

## II. INJUNCTIONS ARE NOT AUTOMATIC; PLAINTIFF MUST MEET *EBAY* FOUR-FACTOR TEST FOR ISSUANCE OF EQUITABLE RELIEF

Permanent injunctions do not flow automatically from a finding of patent infringement. *eBay Inc. v. MercExchange, L.L.C.*, 126 S.Ct. 1837, 1839 (2006). Instead, "the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and . . . such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards." *Id*. Importantly, injunctions are *not* necessary where "there is no reasonable expectation that the wrong will be repeated." *U.S. v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) (quoting *U.S. v. Aluminum Co. of Am.*, 148 F.2d 416, 448 (2d Cir. 1945)).[2]

In *eBay*, the Supreme Court articulated a four-factor test for equitable relief that *must* be met for issuance of an injunction in patent cases. Before the district court can issue a permanent injunction against a defendant for patent infringement, the "plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* at 1839-40. This is not a balancing test; the plaintiff must show each element. *Id.* Here, Nichia fails to meet a single one of these elements, much less all four. Therefore, injunctive relief is not warranted.

---

[2] That is the situation here. No evidence at trial supported any basis for an injunction and, as this Court noted, injunctive relief is unnecessary here: "I had felt that the parties ought to be able to agree that injunctive relief was not required, because the defendant keeps saying they never sold except this aberrant situation, and they don't intend to in the future, and if they sold in the past, and they go on record as saying they are not going to sell in the future that obviates the need for an injunction." Bovard Decl., Ex. B, Trial Tr. 9:14-21.

**A.      Nichia Has Not Suffered Irreparable Injury.**

Nichia offers three arguments in support of its claim that it has suffered and will continue to suffer irreparable injury. None has merit. Two are directly contradicted by the evidence at trial, and the third Nichia resurrects despite having explicitly abandoned it at an earlier stage of the litigation, thereby avoiding discovery on the issue.

It is uncontested that there is no market for Side View LEDs in the United States. As Jamie Jun testified at trial, Seoul does not market Side View LEDs in the United States, and for good reason: Backlight Units (BLUs), the devices into which Side View LEDs are incorporated, are designed and manufactured in Asia -- not in the United States. *Id.* Because there is no market for these devices here, it is no surprise, then, that Seoul sold just $165 worth of these LEDs, as *samples*, to a single legitimate purchaser in the United States. *See* Bovard Decl., Ex. I, Trial Ex. 122. This meager sale -- in the context of global sales of *millions* of dollars worth of 902 LEDs, shows that Nichia has not been, and could not be, harmed by Seoul's activity to the extent it could not be remedied by money damages.

Ignoring these undisputed facts, Nichia complains that "continued infringement by a direct competitor constitutes irreparable harm." Mot. for Perm. Injunction at 5. This is wrong from start to finish. The parties are not Side View LED competitors in the United States (since there is no market for these devices here), and there is no "continued" infringement. A single sale of samples *years* ago to GDLS hardly constitutes "continued infringement." Indeed, since that one *de minimis* sale of samples, the only other infringing sales were those orchestrated by Nichia to Nanoscience Exchange before this lawsuit was brought. It is uncontested that Seoul did not solicit this sale. Bovard Decl., Ex. F, Trial Tr. 878:1-10 (Jun) ("Q. . . . [D]o you know who initiated contact between the two companies, NanoScience and the Seoul companies? A. Actually, NanoScience contacted us first."). Furthermore, it is undisputed that *no* sales of 902s have taken place in the United States since the complaint was filed almost two years ago, in January 2006. Those facts are in stark contrast to the many permanent injunction cases Nichia

1  cites where the plaintiffs faced continuing infringement of large volumes in the United States.[3]

2  Nichia next argues that "Seoul's infringement erodes Nichia's brand recognition and
3  reputation" because "Seoul's 902 LED looks substantially the same as Nichia's 335." Mot. at 6.
4  This argument, too, ignores the evidence at trial. To support this assertion, Nichia now attaches
5  a declaration of its salesman, Dr. Daniel Doxsee, saying that "customers *may* not be able to
6  distinguish the two products," and "customers *may* be confused as to whether the 902 LED or the
7  335 LED was the first on the market . . .." Mot. at 6 (emphasis added) (quoting Declaration of
8  Daniel Doxsee at ¶ 11). When he was under oath at trial, Dr. Doxsee said the exact opposite --
9  that he was not "aware of any instance in which a customer of Nichia decided to purchase a
10 Seoul Semiconductor 902 product instead of a Nichia product." Bovard Decl., Ex. C, Trial Tr.
11 408:16-19 (Dox.). Dr. Doxsee's late-breaking revelation should be disregarded. Declarations
12 that contradict earlier testimony are not credible and must be disregarded. *Foster v. Arcata*
13 *Assocs., Inc.*, 772 F.2d 1453, 1462 (9th Cir. 1985); *see also Radobenko v. Automated Equip.*
14 *Corp.*, 520 F.2d 540, 544 (9th Cir. 1975).

15 Dr. Doxsee's newly submitted declaration also contradicts the testimony of other Nichia
16 trial witnesses. None of the ordinary observers who testified at trial, neither Jeong Joo Kim,
17 Akira Onikiri, nor Hidehiko Naete, had been deceived. Nichia offered Mr. Onikiri and Mr.
18 Naete as witnesses because they are purchasers of LEDs. Bovard Decl., Ex. D, Trial Tr. 577:15-
19 18 (Oni.); 607:13-18 (Nae.). Yet neither one testified that they had mistakenly purchased a 902
20 LED. *Id.* Neither one testified that they had confused the two products, and neither one testified
21 that they had been deceived. Moreover, Mr. Kim *intentionally* purchased both the 335 and 902,
22 not because he was confused, but because his customers distinguished the two products and

---

[3] For example, Nichia cites *Muniaction, Inc. v. Thomson Corp.*, 502 F. Supp. 2d 477 (W.D. Pa. 2007), where a defendant was liable for $38 million in damages for infringing in the United States a patent for auctioning bonds using a web browser, and where, without an injunction, the defendant could have continued offering the infringing web software for millions more. *Id.* at 482 (Cited in Nichia Mot. at 3, 5, 7). Nichia also frequently cites *TiVo v. Echostar Commc'ns Corp.*, 446 F. Supp. 2d 664 (E.D. Tex. 2006), but in that case, a jury awarded nearly $74 million in damages for infringing in the United States, and without an injunction, massive infringement was likely to continue in the U.S. *Id.* at 669-70 (Cited in Nichia Mot. at 3, 5, 7, 8, 10).

1 *specifically* requested one LED or the other. Bovard Decl., Ex. H, Trial Tr. 1345:1-12,19-25
2 (J.J. Kim). Even Nichia's expert, Mr. Woodring, offered no opinion on whether or not
3 customers would be deceived although he admitted that the substantial similarity test includes an
4 ordinary observer being deceived Bovard Decl., Ex. E, Trial Tr. 768:8-11 (Woodring). Thus,
5 there is absolutely no evidence, even from Nichia's own witnesses, that Nichia's brand
6 recognition and reputation have been harmed.
7    Finally, Nichia tries to resurrect its price erosion theory, which it expressly abandoned
8 months ago. *See* Nichia Mot. at 6. This is improper.
9    Initially, Nichia indicated to Seoul that it was going to argue that the sales of the 902s had
10 depressed the price for Nichia's 335 and its other LEDs under a price erosion theory, a variant of
11 lost profits. *See, e.g., Scripto-Tokai Corp. v. Gillette Co.*, 788 F. Supp. 439, 444 (C.D. Cal.
12 1992) ("[L]ost profits can take many forms . . .. The Federal Circuit . . . recognizes lost profits
13 due to [lost sales], price erosion, increased costs, damage to the market and impaired growth
14 resulting from the infringement."); *Minco Inc. v. Combustion Engineering, Inc.*, 95 F.3d
15 1109,1118 (Fed. Cir. 1996). Seoul attempted to take fact discovery on this theory, but was
16 thwarted when Nichia's 30(b)(6) deponents could not and would not answer questions related to
17 the price erosion and lost profits theories. Letter from Nichia Corp. and Seoul Semiconductor,
18 Dkt. No. 252 at 8-9.
19    Then, on May 21, 2007, Nichia served Seoul with the Expert Report of John C. Jarosz
20 ("Jarosz report"). *See* Ex. 58 to the Corrected Declaration of Michael J. Song In Support of
21 Plaintiff Nichia Corporation's Opposition Brief to Seoul's Claim Construction and Motion for
22 Summary Judgment, Dkt. No. 370. Jarosz's report completely abandoned Nichia's lost profits
23 and price erosion theory. Instead, it claimed that Nichia was due either (1) unjust enrichment
24 damages or (2) reasonable royalty damages. *Id.* Nichia's counsel consistently maintained that
25 Nichia's theories of damages were set forth in the Jarosz report. *See* Plaintiff Nichia
26 Corporation's Second Amended Responses to Defendant Seoul Semiconductor, Inc.'s First Set
27 of Interrogatories; *see also* Plaintiff Nichia Corporation's First Amended Responses to
28 Defendant Seoul Semiconductor, Inc.'s First Set of Interrogatories. The day Jarosz submitted his

1   report, counsel for Plaintiff contacted Seoul's counsel to inquire whether Seoul wanted to take
2   Mr. Sakamoto's deposition again in light of the fact that Nichia was not seeking lost profits.  *See*
3   Bovard Decl., Ex. J ("As a practical matter, now that you have the expert report on damages, I
4   am wondering whether you still want to take Mr. Sakamoto's deposition.  Most of the questions
5   you were going to ask *relate to issues that are no longer relevant*.") (emphasis added).  In
6   addition, Nichia refused to produce the customer sales data about the non-335 model LEDs that
7   Seoul had requested because it was not pursuing a lost profits theory.  *See* Bovard Decl., Ex. K
8   ("In light of the fact that *Nichia is not asking for lost profits in this case*, are you still requesting
9   the sales data by customer for the rest of Nichia's side-view LEDs? It appears that the
10  information would only be relevant to a lost profits claim.") (emphasis added); *see also* Bovard
11  Decl., Ex. L ("Nichia's damage theories relate to the sales of 902 LEDs by Seoul, and are not
12  dependent on LED sales by Nichia."); *see also* Bovard Decl., Ex. M  ("because the information
13  relates only to *lost profits, a theory that is not being pursued by Nichia*, Nichia will not produce
14  the newly requested information.") (emphasis added).
15         Despite this, and despite any record of evidence at trial (or even full discovery on the
16  issue before trial), Nichia now tries to use price erosion and lost market share to justify a
17  permanent injunction.  The only evidence Nichia cites to is its late-breaking declaration from Dr.
18  Doxsee.  ("Moreover, Seoul sells its 902 LEDs at a discount as compared to Nichia's 335 LED
19  thereby reducing the amount Nichia can charge for its LEDs." (citing Doxsee Decl. at ¶ 12)).
20  Not only did Nichia thwart discovery on this issue, but there was absolutely no evidence offered
21  at trial to support this claim.  To try to backdoor this into evidence now is improper.  *See, e.g.,*
22  *Medtronic, Inc. v. Telectronics, Inc*., 686 F. Supp. 838, 846-847 (D. Colo. 1987) (evidence
23  would only be relevant to the trial court's decision of whether to grant a permanent injunction "if
24  it is supported by sufficient evidence presented at trial.").
25         Nichia thus has not, and cannot, put forth a single plausible argument that it has been
26  irreparably harmed.  Instead, it seeks a U.S. permanent injunction solely to win a worldwide
27
28

monopoly.[4] Nichia complains of lost market share and price erosion, when, as conceded at trial, there is not a market at all for these products in the United States. In fact, Seoul competes fairly in Asia where it legitimately sells the 902 LED. Seoul has patent rights in parts of Asia, such as Korea, where Nichia has none. Nichia should not be granted a permanent injunction in the United States where Nichia's only aim is to stifle legitimate competition overseas. It is improper. *See Microsoft Corp.,* 127 S. Ct. at 1750 ("It is the general rule under United States patent law that no infringement occurs when a patented product is made and sold in another country.").

### B. Nichia Has Not Shown Its Injuries Cannot Be Adequately Remedied By Money Damages; Any Infringement Took Place Years Ago, in Quantifiable, and is Non-continuing.

Nichia cannot meet the second prong of the *eBay* test either. It has failed to meet its burden of showing its injuries would not be adequately compensated by money damages. Here, Nichia's only damages are the *de minimis* $165 sale to GDLS.

As noted in Nichia's brief, the element of whether a patentee can be adequately compensated by money damages overlaps with the question of irreparable harm. *See Smith & Nephew v. Synthes*, 466 F. Supp. 2d 978, 982-83 (W.D. Tenn. 2006). "Under the principles of equity to which the Court referred throughout its opinion in *eBay,* irreparable harm means 'that unless an injunction is granted, the plaintiff will suffer harm which cannot be repaired.'" *Id.* (internal citations omitted). Here, there is no risk of future harm to Nichia, much less one that could not be repaired. In such situations, it has long been the rule that injunctions are unnecessary where "there is no reasonable expectation that the wrong will be repeated." *U.S. v. W.T. Grant Co.*, 345 U.S. at 633 (also noting that multiple violations need not be predictive of future wrongdoing: "an individual proclivity to violate the statute need not be inferred from the fact that three violations were charged . . ."). This is because the purpose of injunctive relief is to

---

[4] *See* Bovard Decl., Ex. A (*LEDs Magazine* article in which Nichia's spokeperson is quoted as saying, "If granted, the injunction will ban the sale of 902 LEDs and ***any other Seoul products*** that infringe Nichia's patents.") (emphasis added).

prevent future misconduct. *Id.*

All of Nichia's past damages are easily quantifiable: they were shown at trial to be a mere $165. *See supra.* Furthermore, there is no risk of future harm to Nichia. As shown throughout this litigation, the sales of 902 LEDs in the United States were flukes -- because there is *no* market for Side View LEDs in the United States. Moreover, Seoul is currently phasing out the 902 -- even in Asia -- because it is an outdated technology. As Ms. Kim testified at trial, cell phone and electronics manufacturers are seeking thinner and thinner LEDS for their increasingly slim products. Bovard Decl., Ex. G, Trial Tr. 1074:1-10 (H.J. Kim) ("the trend for cell phone industry was that the thickness of cell phone was getting thinner and thinner, from 0.6 to 0.5 to 0.4 to 0.3 And as it stands right now, we are mulling over with the technology dealing with the thickness of 0.3 and 0.2, and we are also making some products, making efforts to making such products."). Nichia apparently concedes this point: "the particular technology in these design patents, is pretty much obsolete. Both Nichia's '335 LED and [Seoul's] '902 [LED], the accused product, are at the very, very tail end of their sales." Mot. at 9 (citing Julian Decl., Ex. I, Pretrial Tr. at 6:24-7:3) (arguing that Seoul would be unburdened by an injunction because these LEDs are obsolete). Indeed, for the past two years, Seoul's only remaining 902 customers have all been in Asia, and Seoul is in the process of phasing out the 902 entirely. B. Kim Decl., ¶¶ 6-9. Therefore, injunctive relief is not in order. Where future infringement would be limited because the infringer is phasing out the infringing product, an injunction should be denied. *See Z4 Techs. v.* Microsoft, 434 F. Supp. 2d 437, 442 (E.D. Tex. 2006).

Nonetheless, Nichia argues that an injunction is appropriate in situations where "[r]elief in the form of monetary damages alone would not meet the ends of justice . . . because this remedy would allow the infringement to continue." Mot. at 7 (citing *Smith & Nephew*, F. Supp. 2d 978, 984 (W.D. Tenn. 2006)). That is not the case. Besides the fact that Seoul is phasing out the 902 worldwide, there simply is no market for these products in the United States. *See supra.* Moreover, none of Nichia's alleged injuries (loss of brand recognition, reputation, and price erosion) would be better remedied by an injunction, and Nichia completely fails to state how an injunction would better serve justice in this case. As a result, monetary damages, are best suited

1 for the instant situation, and injunctive relief should not be awarded.  *See Voda v. Cordis,* 2006 WL 2570614 at * 5-6 (W.D. Okla. 2006) (no injunctive relief where patent owner failed to establish irreparable injury or that monetary damages would be adequate).

### C. Nichia has failed to show that the balance of hardships favors entry of a permanent injunction.

The balance of hardship tips in Seoul's favor.  As discussed above, there is no possibility of future harm to Nichia because (a) there is no market for Seoul's 902 LEDs in the United States, and (2) these products are at the end of their technological life.  Therefore, Nichia will not suffer future "loss of market share, loss of brand recognition, price erosion, and harm to reputation," as Nichia baselessly contends. Nichia Mot. at 8.

By contrast, Seoul will be burdened by hardship if an injunction is granted.  Nichia pursued this litigation not because of a $165 sale of samples.  It pursued this litigation -- after going to the trouble of setting up a sham sale to NanoScience Exchange in the United States -- to stifle Seoul worldwide and to try to tarnish Seoul's reputation in the international LED market.  When it lost its inducement claim at summary judgment, Nichia bore ahead full steam because it still wanted to use a U.S. legal "victory" to slam Seoul in the press and injure its hard-earned reputation.  Time and again, Nichia has issued press releases *in Asia* trying to sully Seoul's name and persuade *Asian* LED buyers not to purchase Seoul products in *Asia*.  *See, e.g.,* Bovard Decl., Ex. A, *LEDs Magazine* article.

Permanent injunctions are not meant to be weapons in a press war between foreign corporations; instead, they should only be granted when absolutely necessary to prevent one party from continuing to infringe another party's interests in the United States. *U.S. v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953); *see also Microsoft Corp.,* 127 S. Ct. at 1750.  Here, Nichia has failed to show how it will be harmed at all; instead, the party who will be harmed is Seoul.  Nichia would only brandish this injunction in Asia to try to scare away Seoul's legitimate Asian customers, and to expand the reach of this litigation to Asian shores.  *See, e.g.,* Bovard Decl., Ex. A, *LEDs Magazine* article.

**D. The public interest is not served by encouraging foreign companies to litigate grudge lawsuits in the U.S. jury system.**

Nichia fails to state any logical way the public would be served by this Court's granting and monitoring an injunction where there is no likelihood that Seoul would infringe in the future. Indeed, the public would be disserved by the granting of an injunction for Nichia, just as the public, including the jury, were disserved by Nichia's bringing this "grudge" lawsuit in the first place. Nichia knows there is no risk of Seoul infringing in the future. Seoul has not sold 902 LEDs in the United States since well before this lawsuit was filed in January 2006; the only U.S. sales beforehand were inadvertent, primarily to Nichia's own agent; and there is no threat of future sales because there is no US market and the product is obsolete. Instead, Nichia is just aiming for another press release with which to tarnish Seoul worldwide. The U.S. public interest will best be served by this Court's refusal to take part in this grudge match. To that end, the Court should deny Nichia's motion for a needless permanent injunction that would only be used as a press ploy in Asia for a dispute between two Asian companies. It is entirely legitimate for the Court to consider factors of the marketplace, like Nichia's use of a permanent injunction to bully another company. *See, e.g., Sundance v. DeMonte Fabricating*, 2007 U.S. Dist. LEXIS 158 at * 9 (E.D. Mich. 2007) (balance of hardships and public interest prongs weighed against injunctive relief where an injunction would be used to "force [Defendant] out of business.").

**III. CONCLUSION**

For the foregoing reasons, Seoul respectfully requests the Court deny Nichia's motion for a permanent injunction.

DATED:  December 28, 2007              Bingham McCutchen LLP

By: _____/s/_____
Kevin M. Bovard
Attorneys for Defendants
Seoul Semiconductor Co., Ltd. and Seoul Semiconductor, Inc.